**PURSELL CONSTRUCTION, INC., Appellee,**

**v.**

**HAWKEYE–SECURITY INSURANCE COMPANY, Appellant.**

No. 97–2370.

Supreme Court of Iowa.

July 8, 1999.

Gregory G. Barntsen of Smith Peterson Law Firm, Council Bluffs, for appellant.

Peter J. Peters of Peter J. Peters, P.C., Council Bluffs, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

In this declaratory judgment proceeding, Pursell Construction, Inc. sued Site Search Hawkeye–Security Insurance Company under a policy Hawkeye had issued to Pursell. Pursell asked the district court to determine whether Hawkeye had coverage regarding a claim for breach of contract and negligent work on a construction project. Pursell also sought a determination that Hawkeye had a duty to defend Pursell against the claim. The policy in question is a general commercial liability insurance policy that includes a products-completed operations hazard provision. Hawkeye appeals a district court ruling that (1) the claim against Pursell involved an occurrence triggering coverage under the policy, (2) there was property damage covered by the policy, and (3) the policy exclusions did not preclude coverage. We reverse as to the first issue and remand with directions.

## I. Background Facts and Proceedings.

K.P. Investments, Inc. hired Pursell to build basements, footings, block works, sidewalks, and driveways for two houses K.P. was building in Council Bluffs in 1995. The construction sites were in a floodplain. The city ordinance required the lowest level of the two houses to be elevated above the floodplain. However, a final city inspection revealed that the lowest level of each house fell below the floodplain and thus violated the ordinance. As a result of this violation, K.P. could not legally occupy, rent, or sell the two houses.

To bring the two houses into compliance with the ordinance, K.P. hired contractors to raise the level of the houses approximately two feet by (1) adding dirt over the existing lower level concrete floors Pursell had constructed, (2) raising the plumbing and pouring another concrete floor on the fill dirt, and (3) constructing knee walls of wood on top of the concrete block to raise the level of the second floor of the houses. Additionally, the contractors had to make other necessary modifications such as constructing new duct work to accommodate the new elevation of the basement floors.

K.P. sued Pursell on theories of breach of contract and negligence for failing to construct the lowest floor of the houses at the elevation required by the city ordinance.

Pursell then brought this declaratory judgment action against Hawkeye. Pursell asked the district court to determine both Pursell's and Hawkeye's rights regarding K.P.'s claims against Pursell under the general commercial liability policy that Hawkeye had issued to Pursell. Hawkeye answered, denying coverage for the claims under the policy and denying it had a duty to defend Pursell against the claims. Hawkeye asserted three grounds for the denials: (1) K.P.'s claims against Pursell are not based on an "occurrence" within the meaning of the policy, (2) the claims are not for "property damage" as defined in the policy, and (3) several exclusions under the policy apply to the claims.

The district court determined the policy did provide coverage for the claims, concluding that there was an "occurrence" and "property damage" as defined in the policy. The court also concluded that the exclusions Hawkeye relied on were indeed applicable to the claims. The court nevertheless concluded the exclusions conflicted with the coverage available under the products-completed operations hazard provision. Because of this conflict, the court ultimately found the policy was ambiguous and construed the ambiguity against Hawkeye. Additionally, the court concluded Hawkeye had a duty to defend Pursell against K.P.'s claims.

On appeal Hawkeye challenges these conclusions, contending there was no coverage and therefore no duty to defend.

## II. Scope of Review.

■ We review a declaratory judgment action either for correction of errors at law or de novo, depending on whether the case was tried at law or in equity. *Mead v. Iowa State Bd. of Parole*, 331 N.W.2d 102, 103 (Iowa 1983). Because this case was tried as a law action, our review is for correction of errors at law.

## III. Coverage.

**A. Background.** Pursell purchased a comprehensive general liability (CGL) policy. In addition, Pursell paid a premium for and received a separate limit of liability for products-completed operations hazard (PCOH) protection. According to one insurance authority,

[t]he comprehensive general liability policy provides protection to an insured, generally a contractor, under premises-operations coverage, who performs work at various locations but once such operation has been completed, as defined, [such protection] is excluded under the policy and if the insured requires liability protection from losses that may occur from its work product it then must carry completed operations coverage or else it is without protection.

7A John Alan Appleman, *Insurance Law and Practice* § 4508.3, at 388–90 (Berdal ed.1979) (footnote omitted) [hereinafter Appleman].

■ Before proceeding to our analysis of whether there was coverage, we think it would be helpful to explain how the PCOH provision fits into a CGL policy. A CGL policy, like every other insurance policy, has an insuring clause under which the insurer agrees to pay sums that the insured becomes legally obligated to pay because of property damages caused by an occurrence. The CGL policy also has exclusions that take away some of this coverage. The PCOH provision is an exception

to these exclusions. Or, stated in another way, the PCOH provision is simply a category of losses that are covered even though these losses might otherwise be excluded. Viewed in this light, the PCOH provision does not create a separate category of coverage. Rather, any loss falling within the PCOH provision must still meet all the requirements of the policy, like any other loss, except the exclusion from which the losses are excepted. *See generally* 1 Eric Mills Holmes & Mark S. Rhodes, *Appleman on Insurance (Second)* § 4.20, at 473 (1996).

From this discussion, it appears our framework of analysis for determining coverage may involve three steps. First, we look to the insuring agreement. If there is coverage, we look next to the exclusions. Last, if any exclusions apply, we then consider whether the PCOH provision is an exception to the exclusion. Here, our analysis ends with the first step because for reasons that follow we conclude that under the insuring agreement there was no coverage.

**B. Analysis.** The insuring agreement portion of the policy here provides in pertinent part:

1. Insuring Agreement.

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

    . . . .

    b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The ... "property damage" is caused by an "occurrence" that takes place in the "coverage territory". . . .

The policy defines "property damage" as

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The parties stipulated there was no physical damage to the house. Pursell, however, contends there was loss of use of the houses because K.P. could neither rent nor sell the houses. Hawkeye contends K.P. did not ask for loss of use; it only asked for the damages to put the houses at the proper elevations. Hawkeye also contends loss of use is an economic loss not recoverable in tort and therefore not recoverable under the policy. We assume, without deciding, that such loss of use is a recoverable element of damages under the policy.

■ But our inquiry does not end here. Because "property damage" is insured only when "caused by an occurrence," the core issue in this appeal is whether the damage for which Pursell seeks coverage resulted from an occurrence.

·The policy defines "occurrence" as "an *accident,* including continuous or repeated exposure to substantially the same general harmful conditions." (Emphasis added.)

The policy does not define "accident." We have defined "accident" as used in insurance policies to mean

an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force.... [G]iving to the word the meaning which a man of average understanding would, we think ["accident"] clearly implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that misfortune.

*Central Bearings Co. v. Wolverine Ins. Co.,* 179 N.W.2d 443, 448 (Iowa 1970) (citations omitted).

The gist of K.P.'s negligence and breach-of-contract claims against Pursell is that Pursell failed to construct the lower level of the houses at the correct elevation as required by its contract with K.P. and by the city ordinance. The claim is essentially one for defective workmanship. Our task is to decide whether this alleged defective workmanship constitutes an occurrence within the meaning of the policy, an issue of first impression for our court.

The majority of courts that have considered this issue have concluded that a CGL policy does not provide coverage for claims against an insured for the repair of defective workmanship that damaged only the resulting work product. *See McAllister v. Peerless Ins. Co.,* 124 N.H. 676, 474 A.2d 1033, 1036–37 (1984). In *McAllister* an insured sued his insurer to resolve a disputed claim for coverage. The insured contended that the CGL policy covered a claim of defective workmanship. The insured's customer had filed a breach-of-contract suit against the insured, seeking to recover the cost of correcting defective landscaping work. The customer did not claim the defects had caused damage to any other property than the work product. The policy had an occurrence clause identical to the one in the policy before us, and with respect to that requirement the court concluded:

The fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship. The master therefore rightly concluded that the declarations in the underlying action allege no occurrence. Despite proper deference, then, to the reasonable expectations of the policyholder, we are unable to find in the quoted policy language a reasonable basis to expect coverage for defective workmanship.

*Id.* at 1036 (citations omitted); *accord Hawkeye–Security Ins. Co. v. Vector*

*Constr. Co.*, 185 Mich.App. 369, 460 N.W.2d 329, 334 (1990). In short, defective workmanship, standing alone, is not an occurrence under a CGL policy.

An Arizona appellate court also followed *McAllister. See United States Fidelity & Guar. Corp. v. Advance Roofing & Supply Co., Inc.*, 163 Ariz. 476, 788 P.2d 1227, 1233 (Ct.App.1989). In *Advance Roofing*, an insurer filed a declaratory judgment action against its insured, seeking a declaration that it had no duty to defend an action filed against its insured. The underlying action against the insured involved a breach-of-contract claim that the insured had failed to replace a number of roofs that it had contracted to replace and had done faulty work on the roofs it did replace. The policy in question was a CGL policy and contained an "occurrence" clause also similar to the one before us. Rejecting the insureds contention that faulty workmanship constitutes an "occurrence," the court reasoned:

> [W]e recognize that there are some authorities that appear to conclude that the mere showing of faulty work is sufficient to bring a claim for resulting damages (of whatever nature) within policy coverage. In our opinion these authorities disregard the fundamental nature of a comprehensive general liability policy of the type involved in this litigation, and ignore the policy requirement that an occurrence be an accident. If the policy is construed as protecting a contractor against mere faulty or defective workmanship, the insurer becomes a guarantor of the insured's performance of the contract, and the policy takes on the attributes of a performance bond. We find these authorities unpersuasive.
>
> In our opinion, the better reasoned authorities hold that mere faulty workmanship, standing alone, cannot constitute an occurrence as defined in the policy, nor would the cost of repairing the defect constitute property damages.

*Id.* at 1233 (citations omitted).

Closer to the facts here is *J.Z.G. Resources, Inc. v. King*, 987 F.2d 98 (2d

Cir.1993). In that case a real estate developer sued a road excavation company for breach of contract and negligence to recover damages arising out of the excavation company's defective workmanship. The plaintiff also joined as a defendant the excavation company's insurer that had issued the excavation company a CGL policy. The excavation company had agreed to construct and install three roads in the plaintiff's development. The excavation company failed to build the roads at elevations called for by the plaintiff's plans and specifications. As a result, the elevations failed to meet city and state requirements. The city refused to accept the roads for dedication and accordingly refused to assume responsibility for road maintenance and snow removal. The trial court found the excavation company negligent and awarded the plaintiff damages for the cost of removing and reconstructing the roads to put them in appropriate condition for acceptance by the city. The court also determined the insurer for the excavation company was liable for the limit of its liability under the CGL policy. Citing with approval holdings in *McAllister, Advance Roofing*, and *Vector*, the Second Circuit Court of Appeals reversed the judgment against the excavation company's insurer. *King*, 987 F.2d at 102–03.

■ We agree with the majority rule and now join those jurisdictions that hold that defective workmanship standing alone, that is, resulting in damages only to the work product itself, is not an occurrence under a CGL policy.

■ Here, K.P. seeks to recover for defective workmanship consisting of Pursell's failure to construct the basement floor levels of the two houses at the proper elevation. And the damages K.P. seeks are limited to the very property upon which Pursell performed work. Consequently, contrary to the district court ruling, the damages here were not the result of an "occurrence" as defined in the policy, and

for that reason there is no coverage. Because there is no coverage, Hawkeye has no duty to defend Pursell against K.P.'s claims. *See Yegge v. Integrity Mut. Ins. Co.*, 534 N.W.2d 100, 103 (Iowa 1995) (holding that there is no duty to defend unless there is a duty to indemnify).

### IV. Disposition.

In sum, we conclude that Pursell's defective workmanship did not constitute an occurrence under the policy definition of that term. Therefore, there was no coverage and for that reason no duty on the part of Hawkeye to defend. We reverse the district court ruling to the contrary and remand for entry of an order dismissing Pursell's petition. The result we reach in this case means we need not address the other issues Hawkeye has raised.

**REVERSED AND REMANDED WITH DIRECTIONS.**