UNITED FIRE & CASUALTY
COMPANY, Appellee/Cross–
Appellant,

v.

SHELLY FUNERAL HOME, INC. and
Ted Shelly, Appellants/Cross–
Appellees,

Victor Schenke and Lila Schenke,
Intervenors.

No. 99–1399.

Supreme Court of Iowa.

April 3, 2002.

Rehearing Denied April 22, 2002.

David J. Dutton and Carolyn A. Rafferty of Dutton, Braun, Staack, & Hellman, P.L.C., Waterloo, for appellant Shelly Funeral Home, Inc.

Mark A. Roeder of Roeder & Hassler, Manchester, for appellant Ted Shelly.

Patrick M. Roby and Christopher L. Bruns of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellee.

Gerald T. Sullivan and William H. Roemerman of Crawford, Sullivan, Read & Roemerman, P.C., Cedar Rapids, for intervenors.

NEUMAN, Justice.

This declaratory judgment action involves coverage questions and a counterclaim for bad faith arising out of the defense of a tort action against a funeral home and its principal employee. The facts in the underlying tort action were bizarre, to say the least. In a nutshell, a jury found that the funeral director abused his access to an apartment owned by the funeral home and then emotionally injured its elderly tenants by repeatedly exposing himself and subjecting them to displays of pornography.

On this appeal, the funeral home contends the district court erred when it failed to enter a judgment against the insurer for alleged bad faith in the defense of the tort suit. The individual employee cites error in the court's failure to enter judgment for attorney fees he incurred for

defending himself. The insurer claims on its cross-appeal that the court erred when it bound the insurer by the jury's finding of negligent supervision in the underlying case. The insurer also cross-appeals the court's interpretation of policy provisions pertaining to an "occurrence," claiming any emotional distress damages were the result of intentional, not accidental, conduct.

██ Because this declaratory judgment action was tried at law, our review is limited to the correction of legal error. *Grinnell Mut. Reins. Co. v. Employers Mut. Cas. Co.*, 494 N.W.2d 690, 692 (Iowa 1993). The district court's well-supported factual findings are binding on us. *Id.* We are not, however, bound by the district court's legal conclusions. *Pierce v. Farm Bureau Mut. Ins. Co.*, 548 N.W.2d 551, 553 (Iowa 1996). For the reasons that follow, we affirm in part, reverse in part and remand for entry of a judgment for attorney fees.

## I. Background Facts and Proceedings.

Plaintiff, United Fire & Casualty Company (hereinafter United Fire), sold a comprehensive general liability policy to defendant, Shelly Funeral Home, Inc. This family-owned mortuary business has operated for three generations in Manchester, Iowa. Defendant Ted Shelly is the grandson of the company's founder. He became employed by the company in 1966 and, at the time of these proceedings, served as its president.

In addition to his duties as funeral director, Ted managed rental properties owned by the funeral home. As manager, Ted had keys allowing him access to the rental units. One of the funeral home's properties was rented for many years by an elderly couple, Victor and Lila Schenke. Ted's relationship with the Schenkes forms the backdrop for this suit over coverage under United Fire's policy.

In May 1997, the Schenkes sued Shelly Funeral Home, Inc., and Ted Shelly, personally, for damages brought about by Ted's sexual exploits in their apartment.[1] The Schenkes' suit rested on a number of theories including intentional infliction of emotional distress, assault, indecent exposure, harassment, trespass, landlord's failure to provide fit and habitable premises, landlord's abuse of access, and corporate liability for negligent hiring and supervision. They sought both compensatory and punitive damages. The defendants' answer and theory of defense rested on Ted Shelly's claim that his activities with the Schenkes were consensual in nature and unrelated to (and unknown by) his employer, Shelly Funeral Home, Inc. United Fire, disputing coverage, defended the lawsuit under a reservation of rights.

The case was tried to a jury. The jury plainly did not buy Ted's candid explanation of the sordid events, and it held the funeral home liable for his acts as well as finding it liable for negligent supervision. In accordance with the jury's verdicts for Lila, the court entered judgment against the funeral home and Ted, jointly and severally, for the sum of $122,500 in compensatory damages and, by way of punitive damages, $40,000 in Lila's favor against Ted. Joint and several liability was like-

1. The petition, as recast, factually asserted that Ted Shelly "on many number of occasions ... entered into the apartment residence of the Plaintiffs and engaged in continuous and ongoing outrageous conduct and conversation, including but not limited to, exposing his genitals and masturbating in the presence of the elderly Plaintiffs while watching pornographic movies or videos on a VCR provided by [Shelly], and while reading pornographic magazines brought to the Plaintiffs' home by [Shelly]."

wise entered in Victor's favor against both defendants in the sum of $97,500. Both defendants filed notice of appeal.

Shortly after the entry of these judgments, and while appeal was pending, United Fire brought this action to declare its duties and coverage obligations, if any, under the policy. Meanwhile it refused the defendants' demand to post a supersedeas bond to protect the funeral home from threatened execution by the Schenkes. Both Ted and the funeral home hired new counsel who filed a counterclaim for bad faith. Counsel also negotiated a settlement of the punitive damages award against Ted in the underlying suit and prevailed upon the Schenkes to delay execution on the remainder of their judgment until the coverage questions raised on this appeal could be resolved.

From a judgment declaring that (1) the funeral home's liability for negligent supervision was covered under the policy, (2) the insurer was not required to reimburse Ted for his attorney fees, and (3) the funeral home was not entitled to a judgment against the insurer for bad faith, all parties have appealed. Further facts will be detailed as they pertain to the issues before us.

## II. Issues on Appeal.

■ Although the funeral home and Ted Shelly are the appellants, and their challenges pertain to the court's rejection of their claims of bad faith and failure to defend, we think it logical to begin with the coverage questions posed by United Fire's cross-appeal. In general, an insurer's objectively reasonable denial of coverage will preclude liability for bad faith. *Morgan v. Am. Family Mut. Ins. Co.*, 534 N.W.2d 92, 96 (Iowa 1995), *overruled on other grounds by Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775 (Iowa 2000). We turn, then, to the coverage questions.

*A. Coverage.* The policy issued by United Fire to the funeral home insures against perils described in two divisions, coverage A and coverage B.

Under coverage A, United Fire agrees to pay damages for which "the insured" becomes legally liable because of "bodily injury" caused by an "occurrence." The term "occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." An exclusion under coverage A precludes coverage for bodily injury "expected or intended from the standpoint of the insured." The language of this exclusion incorporates the common definition of "accident." *See Weber v. IMT Ins. Co.*, 462 N.W.2d 283, 287 (Iowa 1990) (defining "accident" as "an unexpected and unintended event").

Under coverage B, United Fire agrees to pay sums the insured becomes legally obligated to pay because of "personal injury" caused by an offense arising out of the insured's business. In this context, "[p]ersonal injury" expressly includes an injury "arising out of ... wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of [leased premises]." Coverage B, however, does not apply to personal injury "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured."

Under a section of the policy captioned "WHO IS AN INSURED," the policy lists a corporation (such as the funeral home) as well as its "executive officers" and directors "but only with respect to their duties as [the company's] officers or directors." The policy affords similar coverage to employees, who are recognized as having "insured" status "but only for acts within the scope of their employment ...

or while performing duties related to the conduct of [the named insured's] business."

The district court found, and there is no dispute on appeal, that the jury's verdicts against Ted Shelly for intentional infliction of emotional distress and indecent exposure were "clearly based on intentional conduct and not on an 'occurrence' as defined in the policy." Thus the policy afforded him no coverage, as a director and employee of the corporation, for damages arising from his sexual conduct with the Schenkes. It also appears undisputed that under coverage B, the policy insured against personal injury damages awarded on the basis of landlord's abuse of access, a provision not requiring proof of an "occurrence." Thus the record reveals that statutory damages of $5000, assessed jointly and severally against Ted and the funeral home, have been paid by United Fire.

The question is whether United Fire's policy covers the jury's compensatory damages verdict against the funeral home based on its negligent supervision of Ted Shelly. United Fire claims it does not, arguing any emotional distress damages suffered by the Schenkes resulted from Ted's intentional conduct, not an accidental "occurrence." The funeral home and the Schenkes, as intervenors, counter that the nature of the claim must be examined and the coverage determined from the perspective of the insured. As to this verdict, they argue, damages arose from alleged negligent supervision by the funeral home, not Ted's incidental (albeit intentional) conduct. And, the argument continues, any damages attributable to the funeral home on this legal theory were accidental, that is, unexpected and unintended, from its perspective as a named insured.

United Fire insists that its policy affords coverage based on the cause of the bodily injury, not on the type of claim asserted by the plaintiff. Thus it asserts "the standpoint of the insured is irrelevant." In support of its argument, United Fire draws on similar cases from other jurisdictions that have focused on the operative cause of the damages, not the theory of liability asserted by the plaintiff. *See State Farm Fire & Cas. Co. v. Doe,* 130 Idaho 693, 946 P.2d 1333, 1336 (1997) (no coverage under homeowner's policy for intentional sex abuse perpetrated on three-year-old by adolescent son of day care provider); *Sweet Home Cent. Sch. Dist. v. Aetna Commercial Ins. Co.,* 263 A.D.2d 949, 695 N.Y.S.2d 445, 446 (1999) (summarily holding that because operative acts of assault and battery are intentional, "it is of no import" that complaint against employer alleged only negligent hiring, retention and supervision); *Green Chimneys Sch. for Little Folk v. Nat'l Union Fire Ins. Co.,* 244 A.D.2d 387, 664 N.Y.S.2d 320, 321 (1997) (intentional nature of alleged acts of sexual harassment, retaliatory discharge and assault preclude coverage limited to an "occurrence" under general liability policy).

As the district court correctly recognized, however, United Fire's argument cannot be squared with our prior decisions or the pertinent language of its policy. The policy's intentional acts exclusion specifically applies to bodily injury "expected or intended *from the standpoint of the insured.*" (Emphasis added.) This court observed in *Weber* that the term "expected" in such an exclusion denotes knowledge by the "actor" that certain consequences will flow from the intentional actions. *Weber,* 462 N.W.2d at 287 (quoting *City of Carter Lake v. Aetna Cas. & Sur. Co.,* 604 F.2d 1052, 1058–59 (8th Cir. 1979)). Moreover, United Fire's policy contains a "separation clause," expressly providing that "[t]his insurance applies . . . [s]eparately to each insured against

whom claim is made or 'suit' brought." The conduct ascribed to the actor—Shelly Funeral Home—is not intentional sexual misconduct but negligent supervision of its employee.

In *Altena v. United Fire & Cas. Co.*, 422 N.W.2d 485, 488, 490 (Iowa 1988), this court joined the majority of states which hold that when a non-consensual sex act is committed, the law presumes that the perpetrator intended an injury, thereby precluding coverage under a policy containing an intentional acts exclusion. But a negligent supervision claim addresses the negligent acts and omissions of the employer—not the intentional acts of the employee. *Godar v. Edwards*, 588 N.W.2d 701, 708 (Iowa 1999); *see Mork Clinic v. Fireman's Fund Ins. Co.*, 575 N.W.2d 598, 600 (Minn.Ct.App.1998) (recognizing negligent hiring and supervision as additional and actionable cause of injuries suffered when clinic employee abused patients). In contrast to the cases cited by United Fire, other courts faced with similar facts and the identical "occurrence" and intentional act provisions before us have found coverage for negligent hiring and supervision. For example, where an insured corporation's employee sexually molested a minor child on the business premises, one federal court stated:

> [I]f an injury occurs without the agency of the insured, it may be logically termed "accidental," even though it may be brought about designedly by another person. . . . The test of whether an injury is a result of an accident is to be determined from the viewpoint of the insured and not from the viewpoint of the one that committed the act causing the injury.

*Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.*, 842 F.Supp. 1151, 1157–58 (W.D.Ark.), *aff'd*, 33 F.3d 1476 (8th Cir. 1994) (citations omitted). Similar holdings

from other jurisdictions abound. *See, e.g., Am. Employers Ins. Co. v. Doe*, 165 F.3d 1209, 1212 (8th Cir.1999) (coverage for diocese found for negligent supervision of priest who molested child); *Am. States Ins. Co. v. Borbor*, 826 F.2d 888, 895 (9th Cir.1987) (coverage for negligent supervision claim against co-owner of daycare center where other co-owner molested children); *Capital Alliance Ins. v. Thorough–Clean, Inc.*, 639 So.2d 1349, 1352 (Ala.1994) (coverage found for janitorial corporation whose employee used access gained through employment to commit rape; intentional act of employee could not be attributed to employer); *Lawson v. Straus*, 673 So.2d 223, 226 (La.App.1996) (coverage provided to medical clinic company after doctor employed by clinic sexually assaulted clinic employees); *Atl. Employers Ins. Co. v. Tots & Toddlers Pre–School Day Care Ctr., Inc.*, 239 N.J.Super. 276, 571 A.2d 300, 304 (App.Div.1990) (coverage found for negligent supervision claim against family-owned daycare center where husband molested children); *Durham City Bd. of Educ. v. Nat'l Union Fire Ins. Co.*, 109 N.C.App. 152, 426 S.E.2d 451, 456 (1993) (school covered for negligent supervision of middle school basketball coach who raped student); *see generally* 43 Am.Jur.2d *Insurance* § 708, at 766 (1982); David S. Florig, *Insurance Coverage for Sexual Abuse or Molestation*, 30 Tort & Ins. L.J. 699, 712–21 (1994–95).

We are convinced that, when viewed from the funeral home's perspective, the Schenkes' injuries were not intended or expected but fit the definition of "occurrence" found in United Fire's policy. The district court did not err in finding a duty by United Fire to defend and indemnify the funeral home on this ground.

**B. Collateral estoppel.** United Fire also argues that even if the funeral home is insured for its negligent supervision of

Ted Shelly, the court erroneously denied United Fire's request to retry the negligent supervision issue in the declaratory judgment action. The court's denial stemmed from a motion to adjudicate law points made by Schenkes as intervenors. They contended, and the district court ultimately concluded, that the covering language of the policy and principles of collateral estoppel prevented United Fire from relitigating issues of negligence tried in the underlying case.

■■■ Fundamental principles guide our analysis of this issue. The doctrine of issue preclusion strives to protect litigants from the "vexation of relitigating identical issues with identical parties or those persons with a sufficient connective interest to the prior litigation." *State ex rel. Casas v. Fellmer*, 521 N.W.2d 738, 740–41 (Iowa 1994). By stemming unnecessary litigation, the doctrine also promotes judicial economy. *Id.* at 741. Under a familiar four-part test, the doctrine applies to prevent relitigation if

(1) the issue determined in the prior action is identical to the present issue; (2) the issue was raised and litigated in the prior action; (3) the issue was material and relevant to the disposition in the prior action; and (4) the determination made of the issue in the prior action was necessary and essential to that resulting judgment.

*Am. Family Mut. Ins. Co. v. Allied Mut. Ins. Co.*, 562 N.W.2d 159, 163–64 (Iowa 1997); *see Fellmer*, 521 N.W.2d at 741; *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981).

■■ The Schenkes sought to use the doctrine offensively against United Fire who, although not named as a party in the underlying litigation, plainly met the test of being "so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the ... issue and be properly bound by its resolution." *Fellmer*, 521 N.W.2d at 741. This is not uncommon when insurance coverage is at issue. As one noted commentator states:

One who has undertaken to indemnify another against loss arising out of a certain claim and has notice and opportunity to defend an action brought upon such a claim is bound by the judgment entered in such action, and is not entitled, in an action against him for breach of his agreement to indemnify, to secure a retrial of material facts.

18 George J. Couch, *Couch on Insurance* § 74.816, at 1087 (2d ed.1983); *accord* Restatement (Second) of Judgments § 39, at 382 (1982).

■■ United Fire seeks exemption from these rules here, claiming that although it mounted a vigorous defense on behalf of the funeral home, errors in the court's jury instructions on negligent supervision virtually insured a verdict against it.[2] Because the funeral home and Ted Shelly dismissed their appeals over United Fire's objection and, thus, the alleged error was never addressed, United Fire claims it was error for the court in the coverage case to bind the parties by the jury's verdict.

**2.** United Fire objected to an instruction telling the jury that it could find the funeral home liable for negligent supervision if it found "Shelly Funeral Home ... failed to adequately supervise Defendant Ted Shelly." United Fire claimed there was no factual basis for this fundamental legal premise because Ted, as sole manager of the funeral home, had no supervisor and, hence, allowed himself to commit wrongful acts. The Schenkes and the funeral home countered this argument with proof that Ted was a minority stockholder in the corporation, only one of three directors and that the other directors and stockholders neither knew of, nor condoned, his conduct.

Even if we thought there was merit to the alleged instructional error United Fire cites, the fact is the appeal was *not* pursued. As will be discussed further, United Fire refused to post a supersedeas bond pending appeal. This, in turn, prompted the funeral home and Ted Shelly to negotiate with the Schenkes and, ultimately, forego their appeal in exchange for Schenkes' promise not to execute on the judgment until these declaratory judgment proceedings were concluded. Under these circumstances, United Fire is in no position to attack the judgment. *See Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 531–32 (Iowa 1995). And, pursuant to covering language in its policy, United Fire has obligated itself to "pay those sums that the insured becomes legally obligated to pay as damages."

Because the issues of negligence tried in the underlying action were identical to those sought to be retried here by United Fire, as well as material and relevant to the resulting judgment, we reject United Fire's claim that it should have been permitted by the court to relitigate those issues in this declaratory judgment action. No error warranting reversal appears.

***C. Ted Shelly's Attorney Fees.*** Closely related to the coverage question is Ted Shelly's claim that the district court erred when it refused to enter judgment against United Fire for attorney fees incurred by him in the defense of the Schenkes' lawsuit. The court denied the claim because, in its words, "[United Fire] provided Mr. Yagla pursuant to their duty to defend." As Shelly rightly contends on appeal, that finding is not accurate.

Prior to trial, United Fire retained the services of attorney Gene Yagla to defend the funeral home and its employees under the policy while preserving its right to contest coverage. Because of the coverage dispute and possible excess exposure it identified, United Fire encouraged the funeral home (through its director, Ted Shelly) to consult with private counsel. As it turned out, the funeral home's longtime local counsel, Mike Carr, worked side-by-side with Yagla in preparing for trial. The record reveals they pursued a joint strategy to defend the case on the ground that Ted's sexual involvement with the Schenkes was consensual and, in any event, the funeral home neither knew about nor condoned it.

■ On the first morning of trial, circumstances changed. Counsel for the Schenkes balked when he learned that both Yagla and Carr planned to defend both defendants and each expected to exercise strikes of the jury panel, present arguments, and cross-examine each witness. So Yagla withdrew his representation of Ted Shelly, leaving Carr to defend Ted's interests during the eight-day trial and post-trial proceedings that followed. Pursuant to this arrangement, Carr billed Ted $16,956.24. Ted's cross-appeal challenges the trial court's refusal to enter judgment against United Fire for this expense.

■ Again, fundamental rules guide our resolution of this issue. "The duty to defend is broader than the duty to indemnify." *First Newton Nat'l Bank v. Gen. Cas. Co.*, 426 N.W.2d 618, 630 (Iowa 1988). The distinction exists because a plaintiff's basis of recovery is necessarily indeterminable until a case is tried. *Id.* Put another way, the duty to defend arises

whenever there is potential or possible liability to indemnify the insured based on the *facts* appearing at the outset of the case. In other words, *the duty to defend* rests *solely* on whether the petition contains any allegations that *arguably* or *potentially* bring the action within the policy coverage. If any claim

alleged against the insured can rationally be said to fall within such coverage, the insurer must defend the entire action. In case of doubt as to whether the petition alleges a claim that is covered by the policy, the doubt is resolved in favor of the insured.

*Employers Mut. Cas. Co. v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 641 (Iowa 1996) (citation and quotations omitted).

From the outset, Schenkes' petition asserted facts invoking United Fire's duty to defend on several theories, including allegations against both defendants for landlord's abuse of access. United Fire has satisfied the Schenkes' judgment to the extent of this claim. Yet it withdrew its representation of Ted Shelly on this or any other claim arguably covered by the policy on the first day of trial. This was plainly contrary to its contractual obligation and duty to defend. *See Clark–Peterson Co. v. Indep. Ins. Assocs., Ltd.*, 514 N.W.2d 912, 915 (Iowa 1994); *New Hampshire Ins. Co. v. Christy*, 200 N.W.2d 834, 840 (Iowa 1972). The district court's erroneous ruling on this point must be reversed and judgment entered for Ted Shelly against United Fire on this claim.[3]

***D. Insured's Counterclaim for Bad Faith.*** In response to United Fire's declaratory judgment action, the funeral home mounted a sweeping attack on the insurer's defense strategy or alleged lack thereof. Unsuccessful in those arguments at trial, the funeral home has appealed, citing error in the court's failure to recognize "several categories of unreasonable conduct that have been judicially labeled as bad faith." Because most of the funeral home's arguments address questions of trial strategy, not bad faith, and the remainder center on issues of policy construction that were fairly debatable, we affirm the

district court's judgment for United Fire on this claim.

■ The parties agree that to establish a claim for first-party bad faith, the insured must prove two facts: (1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis. *Kiner v. Reliance Ins. Co.*, 463 N.W.2d 9, 12 (Iowa 1990). The first element is objective, the second subjective. *Brown v. Danish Mut. Ins. Ass'n*, 550 N.W.2d 171, 175 (Iowa Ct.App.1996). If a claim is " 'fairly debatable,' " the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988) (citation omitted); *accord Morgan*, 534 N.W.2d at 96. "Whether a claim is fairly debatable is appropriately decided by the court as a matter of law." *Morgan*, 534 N.W.2d at 96.

Here the funeral home's claims of bad faith fall into three general categories. First it claims United Fire wrongly interpreted the coverage provisions of the policy and unreasonably delayed in advising the funeral home of its position. Second it assails defense counsel's trial preparation and strategy, including the initial decision to proceed without hiring separate attorneys for the corporation and Ted Shelly. Third, it faults United Fire's failure to post a supersedeas bond to prevent execution on the insured's property while appeal was pending. We shall address each allegation briefly.

■ *1. Delaying coverage decision.* In a nutshell, the funeral home claims that United Fire's dual decision to defend under a reservation of rights and then, fol-

---

**3.** United Fire does not contest the number of hours devoted by Carr to legal services performed for Ted Shelly, or the reasonableness of the hourly rates charged.

lowing an adverse verdict, to file this declaratory judgment action constitutes bad faith. Like the district court, we find no merit to this contention. The case presented a conundrum from the outset, challenging the parties and the court to sort out intentional from negligent conduct, the knowing actions of an agent from the unsuspecting ignorance of his principal, all overlaid with claims for emotional distress damages under an insuring agreement that covers "bodily injury" in the case of an "occurrence" but "personal injuries" when they stem from other conduct. United Fire's detailed reservation of rights letter furnished timely notice to its insured that coverage was in dispute. That its position on the disputed issues was objectively reasonable is confirmed by our discussion of coverage elsewhere in this opinion. Moreover, United Fire's decision to defend the tort action and await suit over coverage pending outcome of the litigation reflects respect for the funeral home's reputation in the community, rather than bad faith.

■■■ *2. Trial strategy.* The funeral home insists that United Fire had its own interests in mind, rather than its insured's, when it blindly pursued a "consenting adults" defense, failed to recognize the obvious conflict between the funeral home and Ted Shelly, and insufficiently prepared to counter the merits of the Schenkes' claims as well as their proof of emotional injury. Beyond the hyperbole, however, these complaints amount to no more than an attack on strategic decisions made by the insurer's able and experienced counsel. An insurer's "sub-par" investigation and evaluation of a claim cannot, standing alone, support a claim of bad faith. *Reuter v. State Farm Mut. Auto.*

*Ins. Co.*, 469 N.W.2d 250, 254 (Iowa 1991). The district court evaluated the factual record on these issues and resolved the controversy in the insurer's favor. No ground for reversal appears.

■■■ *3. Failure to post supersedeas bond.* The funeral home makes much of the fact that United Fire appealed the Schenkes' judgment but, "in callous disregard of [the insured's] plight," refused to post a supersedeas bond. It alleged at trial, and urges on appeal, that this was evidence not only of bad faith but maliciousness justifying an award of punitive damages. In support it offers the brief response of United Fire's general counsel who, when questioned about this alleged obligation, agreed "off the top of [his] head," that the insurer did not have a choice. In his words, "I don't think they get anywhere if they don't file an appeal bond on behalf of their insured."

The district court rejected the lawyer's casual opinion, relying instead on policy language that plainly makes the decision discretionary with the insurer.[4] Given the insurer's good-faith doubts about coverage, and the underlying purpose of the bond to secure the judgment, we agree it was reasonable for United Fire not to place itself in a position of assuming liability on the bond no matter the outcome of the appeal. The funeral home cites no authority to the contrary.

■■■ Finally, in the absence of proof that United Fire acted in bad faith or was "stubbornly litigious," the district court correctly denied the funeral home's plea for attorney fees and expenses in the coverage action. *Clark–Peterson Co.*, 514 N.W.2d at 916.

4. Pertinent language under "Supplementary Payments—Coverages A and B" concerning the cost of bonds to release attachments within the policy limits states: "We do not have to furnish these bonds."

## III. Disposition.

In summary, we affirm the district court's denial of the funeral home's claims for bad faith, affirm its judgment for the funeral home on the question of coverage for negligent supervision based on the jury's verdict in the underlying tort suit, and reverse the court's ruling on United Fire's duty to defend Ted Shelly. We remand to the district court for entry of a judgment against United Fire for attorney fees incurred by Ted Shelly in his defense of the litigation involving the Schenkes.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; AFFIRMED ON CROSS–APPEAL.