WATERMAN, Justice
(dissenting).
I respectfully dissent. In my view) there was no liability coverage for the builder under the facts of this case because there was no accident as required under the terms of the insurance contract. National Surety Corporation, therefore, was entitled to a directed verdict on Westlake’s coverage claims. Our precedent defines “accident” — as used in a commercial general liability (CGL) occurrence policy with the same “occurrence” definition — to mean “an undesigned, sudden, and unexpected event.” Pursell Constr., Inc. v. Hawkeye-Sec. Ins. Co., 596 N.W.2d 67, 70 (Iowa 1999) (emphasis added) (quoting Cent. Bearings Co. v. Wolverine Ins. Co., 179 N.W.2d 443, 448 (Iowa 1970)). There is nothing sudden about the gradual infiltration of rainwater through leaky window frames over several seasons,- which the United States Court of Appeals for the Eighth Circuit squarely held- is not a covered occurrence in a recent case applying Iowa law to the same policy language. Liberty Mut. Ins. Co. v. Pella Corp., 650 F.3d 1161, 1175-76 (8th Cir.2011). The majority disregards - that persuasive decision directly on point and instead relies on inapposite Iowa authority finding liability coverage for a landlord’s negligent supervision of an employee who flashed tenants. United Fire & Cas. Co. v. Shelly Funeral Home, Inc., 642 N.W.2d 648, 651 (Iowa 2002). That makes no sense to me.
*745 I would honor stare decisis and conclude that defective workmanship that allows rainwater to leak into a residence is not an accident 'and, therefore, is not a covered occurrence under the- CGL policy. The policy defines an • occurrence as “an accident, including continuous or repeated exposure to substantially the same genéral harmful conditions.” This is the same policy language that we interpreted in Pursell and the Eighth Circuit applied in Pella Carp. The majority never identifies the “sudden unexpected event” that triggers liability coverage for the mold and:water damage resulting from leaky, defective window frames. The majority in effect converts the liability insurance policy into a home warranty.
Both parties agreed that, an accident required a sudden event. At oral argument, Westlake’s counsel contended that rainfall or poor workmanship was the sudden event:
CHIEF JUSTICE CADY: What is the sudden nature of the event? A. I think the sudden nature of the water leaks are that they happen primarily when a rain event occurs. A rain event doesn’t happen all the time. It can be a sudden event from the perspective of a general contractor, and event causes damage. Setting that aside, I think the sudden event could also be subcontractor work being done defectively.
Counsel also argued the severe winter in 2003-2004, with hard frosts,[14] caused insured damage to the apartment buildings. A majority of courts in other jurisdictions hold poor-workmanship claims are not covered under CGL policies. See Grp. Builders, Inc. v. Admiral Ins. Co., 123 Hawai'i 142, 231 P.3d 67, 73 (Haw.Ct.App.2010) (surveying cases to conclude “[a] majority of ... jurisdictions ha[ve] held that claims of poor workmanship, standing alone, are not occurrences that trigger coverage under CGL policies” (quoting Gen. Sec. Indem. Co. of Ariz. v. Mountain States Mut. Cas. Co., 205 P.3d 529, 535 (Colo.App.2009), superseded by statute, Colo.Rev. Stat. Ann. § 13-20-808(1)(b)(III) (effective May 21,2010)). “In contrast, a minority of jurisdictions ha[ve] held that the damage resulting from faulty workmanship is an accident, and thus, a covered occurrence, so long as the insured did not intend the resulting damage.” . Id. (quoting Gen. Sec. Indem. Co., 205 P.3d at 535). The case directly, on point applying Iowa law and the majority rule — Pella Corp. — holds there is no CGL coverage for water damage from leaky window frames. I would follow that authority.
My colleagues, without finding any ambiguity in the occurrence definition, rely heavily on the insurance industry’s drafting history for that standard policy language. We should not go beyond the four corners of the insurance contract to interpret unambiguous policy language. West-lake makes no claim that its assignee relied on any industry understanding or drafting history when it purchased the insurance policies at issue. More likely, the premiums for the policy were priced based on risks under well-settled Iowa law holding poor workmanship is not covered. In Iowa Comprehensive Petroleum Underground Storage Tank Fund Board v. Farmland Mutual Insurance Co., we concluded the drafting history of a CGL policy’s pollution exclusion was irrelevant because the contract language was unambiguous. 568 N.W.2d 815, 819 (Iowa 1997) (“We reject the [insured’s] argument that the court should have consid *746 ered the industry 'understanding’ in 1970 in interpreting the sudden and accidental language of the policies.”). The majority ignores that case and the well-settled principle it applies.
The majority relies on language in an exception to exclusion “m” to change the scope of coverage under the occurrence definition:
m. Damage to Impaired Property or Property Not Physically Injured
[[Image here]]
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to “your product” or “your work” after it has been put to its intended use.
(Emphasis added.) The majority erroneously concludes that the phrase “sudden and accidental” in exclusion “m” means the term “accident” in the occurrence definition does not mean a sudden unintended event. Westlake never made that argument, and no other court has reached the same conclusion. I would not make that leap. In Iowa Comprehensive, we interpreted the phrase “sudden and accidental” in a CGL policy’s pollution exclusion to hold sudden had a temporal meaning (“abrupt”) when paired with accidental. 568 N.W.2d at 818-19. Accordingly, that exclusion barred coverage for “pollution [that] occurred over a period of many years.” Id. at 819. And we interpreted accidental in the same pairing to mean “unexpected and unintended.” Id. at 818 (quoting Weber v. IMT Ins. Co., 462 N.W.2d 283, 287 (Iowa 1990)). We did so to give each word in the pair a meaning that avoided rendering the other word redundant. Id. That is, if we had interpreted accidental to mean sudden, then the term “sudden” in that pairing would be surplusage. Id. at 818-19. The problem with the majority’s analysis is that the occurrence definition uses the word “accident” alone, and as we held in Pwrsell, it means a sudden, unexpected event. Pursell Constr., 596 N.W.2d at 70. There was nothing sudden about the damage from water leaks over the winter of 2003-2004 in this case. See Iowa Comprehensive, 568 N.W.2d at 819 (rejecting argument that each leakage of pollutants was a discrete, sudden event).
I acknowledge there is a split in authority on these coverage questions. Many courts cited by today’s majority have held defective work by a subcontractor can be an occurrence. I agree that defective workmanship can lead to an occurrence covered under CGL policies if and when there is a sudden and unexpected event resulting in damage to a third party, rather than to the poorly constructed building itself. If a defectively installed balcony collapses and injures a passerby who sues the builder, that strikes me as a covered occurrence under a liability policy. But a property owner who sues the builder to replace a sagging balcony before it collapses does not allege an occurrence covered under the builder’s CGL policy.
What Westlake lacks is a sudden event causing damage to something other than the buildings. A subcontractor’s faulty work that causes gradual water infiltration is not an accident or covered occurrence, and the CGL insurer is not required to pay for the resulting water damage requiring repairs to the building itself. As the Seventh Circuit aptly observed, if “insurance proceeds could be used for damages from defective workmanship, a contractor could be initially paid by the customer for its work and then by the insurance company to repair or replace the work.” Lagestee-Mulder, Inc. v. Consol. Ins. Co., 682 F.3d 1054, 1057 (7th Cir.2012) (quoting CMK Dev. Corp, v. W. Bend Mut. Ins. Co., 395 Ill.App.3d 830, 335 Ill.Dec. 91, 917 N.E.2d *747 1155, 1168 (2009)). Accordingly, the better-reasoned opinions
require that for an incident to constitute an “occurrence” or “accident” in the building construction context, “there must be damage to something other than the structure, i.e., the building, in order for coverage to exist.” “[T]he natural and ordinary consequences of defective workmanship ... d[o] not constitute an occurrence.’ ”
Cincinnati Ins. Co. v. Northridge Builders, Inc., No. 12 C 9102, 2015 WL 5720256, at *5 (N.D.Ill. Sept. 30, 2015) (quoting Viking Constr. Mgmt, Inc. v. Liberty Mut. Ins. Co., 358 Ill.App.3d 34, 294 Ill.Dec. 478, 831 N.E.2d 1, 16 (2005)). The damages awarded by the jury here were for the costs of repairing the apartment buildings, not other property.
I take issue with my colleagues’ conclusion that most other courts would find CGL coverage on this record. Westlake seeks recovery of the costs to remedy poor workmanship. The following state supreme courts have held that the cost to repair defective construction is not covered under a CGL policy. Owners Ins. Co. v. Jim Carr Homebuilder, LLC, 157 So.3d 148, 156 (Ala.2014) (per curiam) (“In sum, the cost of repairing or replacing faulty workmanship is not the intended object of a CGL policy issued to a builder or contractor.”); Essex Ins. Co. v. Holder, 370 Ark. 465, 261 S.W.3d 456, 460 (2008) (per curiam) (“Faulty workmanship is not an accident; instead, it is a foreseeable occurrence, and performance bonds exist in the marketplace to insure the contractor against claims for the cost of repair or replacement of faulty work.”), superseded by statute, Ark.Code Ann. § 23-79-155(a)(2) (West 2011); Cincinnati Ins. Co. v. Motorists Mut. Ins. Co., 306 S.W.3d 69, 76 (Ky.2010) (holding there was no occurrence because “[o]ne cannot logically say ... that the allegedly substandard construction of the ,.. home by the [contractor] was a fortuitous, truly accidental, event”); Concord Gen. Mut. Ins. Co. v. Green & Co. Bldg. & Dev. Corp., 160 N.H. 690, 8 A.3d 24, 28 (2010) (holding defective work in constructing a chimney that required replacement was not an occurrence under CGL policy); Westfield Ins. Co. v. Custom Agri Sys., Inc., 133 Ohio St.3d 476, 979 N.E.2d 269, 273 (2012) (holding defective work constructing grain bin was not an occurrence because faulty workmanship is not' fortuitous); Oak Crest Constr. Co. v. Austin Mut. Ins. Co., 329 Or. 620, 998 P.2d 1254, 1257-58 (2000) (holding deficient performance of a construction contract cannot be an accident under a CGL policy); Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 589 Pa. 317, 908 A.2d 888, 899 (2006) (holding owner’s claims against builder arising from faulty workmanship constructing industrial facility were not covered under CGL policy “intended to insure against accidents”); L-J, Inc. v. Bituminous Fire & Marine Ins. Co., 366 S.C. 117, 621 S.E.2d 33, 36 (2005) (“[Because faulty workmanship is not something that is typically caused by an accident or by exposure to the same general harmful conditions, we hold that the damage in this case did not constitute an occurrence.”), superseded by statute, S.C.Code Ann. § 38-61-70(B)(2) (2011); see also Transp. Ins. Co. v. AARK Constr. Grp., Ltd., 526 F.Supp.2d 350, 356-57 (E.D.N.Y.2007) (holding CGL insurer did not cover cost to repair parking garage or loss of use of the structure because “[t]o hold otherwise would convert [the CGL insurer] into a surety for [the builder’s] performance”); Gen. Sec. Indem. Co., 205 P.3d at 535 (discussing the competing approaches and adopting the majority approach that faulty construction is not an occurrence under a CGL policy); Grp. Builders, Inc., 231 P.3d *748 at 69, 73 (holding that mold damage to apartment building caused by defective construction was not an occurrence); Prod. Sys., Inc. v. Amerisure Ins. Co., 167 N.C.App. 601, 605 S.E.2d 663, 666 (2004) (*‘[D]amages based solely on shoddy workmanship ... are not ‘property damage’ within the meaning of a standard form CGL policy.” (quoting Wm. C. Vick Constr. Co. v. Pa. Nat’l Mut. Cas. Ins. Co., 52 F.Supp.2d 569, 583 (E.D.N.C.1999))). I would keep our state in this majority.
In Pursell, we held that defective workmanship is not an occurrence under a CGL policy. 596 N.W.2d at 71. Pursell Construction, Inc. was hired to build the basements, footings, block works, sidewalks, and driveways for two houses in Council Bluffs. Id. at 68. The homes were built on a floodplain, and Pursell had violated a city ordinance that required the basement to be elevated above the floodplain. Id. As a result, the homeowner could not legally occupy, rent, or sell the houses. Id. The homeowner sued Pursell,. alleging breach of contract and negligence for failing to build the lowest floor at the required elevation. Id. Pursell brought a declaratory judgment action against its CGL,insured to determine coverage. Id. The district court held that there was an occurrence under the policy requiring the insurer.to defend the owner’s lawsuit against Pursell. Id.
We reversed and held that under the standard CGL policy, an occurrence requires an accident. Id. at 70. We defined the term “accident” in the CGL policy as
an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force.... [Gjiving to the word the meaning which a man of average understanding would, we think [“accident”] clearly implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that misfortune.
Id. (quoting Cent. Bearings Co., 179 N.W.2d at 448). We noted that the “majority of courts that have considered this issue have concluded that a CGL policy does not provide coverage for claims against an insured for the repair of defective workmanship that damaged only the resulting work product.” • Id. “In short, defective workmanship, standing alone, is not an occurrence under a CGL policy.” Id. at 71. “If the [CGL] policy is construed as protecting a contractor against mere faulty or defective workmanship, the insurer becomes a guarantor of the insured’s performance of the contract, and the policy takes on the attributes of a performance bond,” Id. (quoting U.S. Fid. & Guar. Corp. v. Advance Roofing & Supply Co., 163 Ariz. 476, 788 P.2d 1227, 1233 (Ariz.Ct.App.1989)); see also Auto-Owners Ins. Co. v. Home Pride Cos., 268 Neb. 528, 684 N.W.2d 571, 577 (2004) (“[T]he cost to repair and replace the damages caused by faulty workmanship is a business risk not covered under a CGL policy.”).
The majority gives short shrift to stare decisis. Although the majority initially distinguishes Pursell by noting that the court “need not consider whether property damage arising due to the insured’s own defective workmanship may constitute an occurrence,” the majority goes on to state we “call[ed] into question” Pursell in Shelly Funeral Home, a case that- never mentions Pursell. In Shelly Funeral Home, Ted Shelly, a' manager for the insured funeral home, took advantage of having keys to gain access to rental units owned by his employer. 642 N.W.2d at 650. He “emotionally injured ... elderly tenants by repeatedly exposing himself and subjecting them to displays of pornography” while working for Shelly Funeral Home. Id. The funeral home’s liability insurer brought a declaratory judgment to deter *749 mine coverage. Id. at 652. The insurer argued its policy did not cover damages intentionally inflicted by the employee. Id. at 658. We retrained the coverage question as to whether the policy covered claims alleging the employer’s negligent supervision, noting “[t]he conduct ascribed to the actor — Shelly Funeral Home — is not intentional sexual misconduct but negligent supervision of its employee.” Id. at 654. We held the liability policy covered claims alleging the employer’s negligent supervision of its employee. Id. Shelly Funeral Home in no sense “call[ed] into question” Pursell-, those cases adjudicated different issues.[15] A key difference is that iii Shelly Funeral Home, we found the liability policy'covered the injury claims asserted by third-party tenants. Here, and in Pursell, the damages sought were for the costs to remedy the construction defects, riot harm to a third party or other property-
Our court of appeals correctly considered Pursell good law in 2009, five years after we decided Shelly Funeral Home W.C. Stewart Constr., Inc. v. Cincinnati Ins. Co., No. 08-0824, 2009 WL 928871, at *2-4 (Iowa Ct.App. Apr. 8, 2009). In that ease, a subcontractor sought indemnification for defective subgrading that caused a wall, built by a different subcontractor, to crack. Id. at *1. The court applied Pursell and concluded the policy did not cover the damage. Id. at *3-4.
The Eighth Circuit likewise considered Pursell good law in Pella Corp., 650 F.3d at 1175. The plaintiff homeowners in the underlying lawsuits alleged Pella sold defective windows that allowed water to leak through the windows’ aluminum cladding. Id. at 1164. The Eighth Circuit, relying on Pursell, held that
the property damage — whether to the windows themselves or the structure of the building near the windows — was caused by a defect that Pella was alleged to have known about. Under Iowa law, such defective workmanship ... cannot be considered an occurrence, i.e., “an undesigned, sudden, and unexpected event.”
Id. at 1176 (quoting Pursell, 596 N.W.2d at 70). I reach the same conclusion here.
A different result is not warranted because the defective work here was performed by subcontractors rather than the insured- general contractor responsible for their work. “Damage resulting from - defective work performed by subcontractors is also not an ‘accident’ and thus not ari ‘occurrence’ within the meaning of a general contractor’s CGL policy_” Northridge Builders, Inc., 2015 WL 5720256, at *5. An occurrence is “dependent on the nature of the act, not on who performs it.” Hastings Mut. Ins. Co. v. Mosher, Dolan, Cataldo & Kelly, Inc., No. 265621, 2006 WL 1360404, at *3, *6 (Mich.Ct.App. May 18, 2006) (holding mold damage -in the subfloor material and joists above the basement ceiling caused by defective construction was not an occurrence); see also Oak Crest Constr. Co., 998 P.2d at 1257-58 (holding subcontractor’s “deficient” painting work was not an accident and, therefore, not an occurrence under the CGL policy); Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., 941 A.2d 706, 715-16 (Pa.Super.Ct.2007) (holding subcontractor’s faulty construction was not an occurrence ünder a CGL policy with a *750 subcontractor exception to a “your work” exclusion).
The majority improperly relies on the exceptions to the “your work” exclusion to create coverage. We recently held that exceptions to exclusions cannot be used to broaden the grant of coverage in the insuring clause (occurrence definition). Amish Connection, Inc. v. State Farm Fire & Cas. Co., 861 N.W.2d 230, 239-40 (Iowa 2015) (“In simplistic terms, the process is such: if the insuring clause does not extend coverage, one need look no further. If coverage exists, exclusions must then be considered.” (quoting Hartford Cas. Ins. Co. v. Evansville Vanderburgh, Pub. Library, 860 N.E.2d 636, 646 (Ind.Ct.App.2007))). “[A]n exception to an exclusion does not create coverage or provide an additional basis for coverage but, rather, ‘merely preserves coverage already granted in the insuring provision.’ ” Stoneridge Dev. Co., Inc. v. Essex Ins. Co., 382 Ill.App.3d 731, 321 Ill.Dec. 114, 888 N.E.2d 633, 656 (2008) (citation omitted) (quoting W. Cas. & Sur. Co. v. Brochu, 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872, 878 (1985)); see also Aquatectonics, Inc. v. Hartford Cas. Ins. Co., No. 10-CV-2935 (DRH)(ARL), 2012 WL 1020313, at *1 (E.D.N.Y. Mar. 16, 2012) (holding a subcontractor exception to a “your work” exclusion did not broaden definition of an “occurrence” under the policy); Millers Capital Ins. Co., 941 A.2d at 715-16 (declining to find exception in “your work” exclusion with a subcontractor exception broadened insurance coverage). There is no coverage without a sudden event, regardless of whether the defective work was performed by a subcontractor instead of the insured general contractor.
Some courts cited by the majority hold faulty construction can be an occurrence under a CGL policy based on a judicial definition of accident that omits the word sudden. For example, in Chenington v. Erie Insurance Property & Casualty Co., the West Virginia Supreme Court began its analysis of whether faulty construction can be an occurrence as we did in Pursell — by defining accident. 231 W.Va. 470, 745 S.E.2d 508, 520 (2013). But it defined accident as “not deliberate, intentional, expected, desired, or foreseen” by the insured. Id. (quoting Columbia Cas. Co. v. Westfield Ins. Co., 217 W.Va. 250, 617 S.E.2d 797, 801 (2005)). The court concluded that under this definition of accident, faulty construction must be an occurrence because “[t]o find otherwise would suggest that [the contractor] deliberately sabotaged the very same construction project it worked so diligently to obtain.” Id. Such cases are readily distinguishable from Pursell in which we defined accident to include the temporal requirement that it be sudden. That requirement does not encompass Westlake’s claim for gradual damage from water infiltration over a period of months.
The majority cites several state supreme court decisions without mentioning the dissents in those cases. Chief Justice Shepard, in his dissenting opinion in Sheehan Construction Co. v. Continental Casualty Co., noted CGL policies “are neither designed nor priced as coverage for whatever demands the insured may face in the nature of ordinary consumer claims about breach of warranty.” 935 N.E.2d 160, 172 (Ind.2010) (Shepard, C.J., dissenting). He questioned whether there “exist[s] in the marketplace an insurance product that ‘covers me when I don’t do a very good job.’ ” Id. Another dissenting justice emphasized the distinction between an uncovered repair to the building itself and a covered accident when defective construction results in harm to another. Id. at 172-73 (Sullivan, J., dissenting). Chief Justice Vande Walle, dissenting in K & L Homes, Inc. v. American Family Mutual *751 Insurance Co., agreed with- the Indiana dissent and disagreed with overruling North Dakota precedent holding “property damage caused by faulty workmanship is a covered occurrence [only] to the extent it causes damage to property other than the work product.” 829 N.W.2d 724, 743 (N.D. 2013) (Vande Walle, C.J., dissenting). Again, Westlake was awarded damages for repairs to the building itself. I fall on the side of the numerous courts holding those costs are not covered under this CGL policy.
In Motorists Mutual Insurance Co., the contractor built a home “so poorly ... that it was beyond repair and needed to be razed” within five years of its completion. 306 S.W.3d at 71. The Kentucky Supreme Court held that defective workmanship, standing alone, is not an occurrence under a CGL policy. Id. at 73. The court defined an accident in the insurance law context as “something that does not result from a plan, design, or ... intent on the part of the insured.” Id. at 76 (quoting Stone v. Ky. Farm Bureau Mut. Ins. Co., 34 S.W.3d 809, 812 (Ky.Ct.App.2000)). “[F]ocusing solely upon whether [the contractor] intended to build a faulty house is insufficient. Rather, a court must also focus upon whether the building of the ... house was a ‘ “chance event” beyond the control of the insuredId. (quoting 16 Erie Mill Holmes, Holmes’ Appleman on Insurance 2d § 116.1B, at 6 (2000)). Because the contractor had control over the construction of the home, whether directly or through its subcontractors, there was no accident or covered occurrence. Id.
The Third Circuit reached the same conclusion in Specialty Surfaces International, Inc. v. Continental Casualty Co., 609 F.3d 223, 238-39 (3d Cir.2010). In Specialty Surfaces, a general contractor installed a turf football field for a school. Id. at 227. Within a year of its completion, the field “began to exhibit defects in materials and workmanship” caused by a defectively constructed water drainage system. Id. at 228. The insured general contractor argued the liability insurer owed a duty to defend because the sub-grade, which was the cause of the drainage problems, was installed by a subcontractor. Id. at 238. The Third Circuit applied Pennsylvania law and rejected the contractor’s coverage claims. Id. The Third Circuit held that “[fjaulty workmanship, even when east as a negligence claim, does not constitute such an [occurrence]; nor do natural and foreseeable events like rainfall.” Id. at 231. These cases are persuasive and consistent with Pursell. I would follow those decisions.
For these reasons, I respectfully dissent.
CADY, C.J., and MANSFIELD, J., join this dissent.

. Westlake cites nó case holding frost damage to a building is a covered accident under a CGL policy.

. Neither Westlake nor the amici ask us to overrule Pursell or argue Shelly Funeral Home implicitly or explicitly overruled Pur-sell. The parties' briefs in Shelly Funeral Home did not even cite Pursell, much less ask us to overrule it. Normally, we do not overrule our precedent sua sponte. Nor has the Iowa legislature overruled Pursell.