ALAN B. JOHNSON, UNITED STATES DISTRICT JUDGE
This matter comes before the Court on a number of pending motions for summary judgment, including:
1. Interstate Fire & Casualty Company and Fireman's Fund Insurance Company's Motion for Summary Judgment" (Doc. 141), and Apartment Management Consultants LLC's and Sunridge Partners, LLC's opposition thereto (Doc. 143).
2. Apartment Management Consultants LLC's and Sunridge Partners LLC's Motion for Partial Summary Judgment # 1 Regarding Contractual Damages Pursuant to FRCP Rule 56" (Doc. 139) and Interstate Fire & Casualty Co. and Fireman's Fund Insurance Co's opposition thereto (Doc. 144).
3. Apartment Management Consultant LLC's and Sunridge Partners LLC's "Motion for Partial Summary Judgment # 2 Regarding Attorneys' Fees and Interest under Wyo. Stat. § 26-15-124 Pursuant to FRCP Rule 56" (Doc. 138) and Interstate Fire & Casualty Co. and Fireman's Fund Insurance Co.'s opposition thereto (Doc. 148).
4. Interstate Fire & Casualty Company and Fireman's Fund Insurance Company's Motion for Partial Summary *1246 Judgment (Doc. 78) and Apartment Management Consultant LLC's and Sunridge Partners LLC's opposition thereto (Doc. 79).
The Court has reviewed the motions, all matters of record and the materials offered in support of the parties' respective submissions, the applicable law and is fully advised. For the reasons stated below, the Court FINDS and ORDERS as follows:
Background
The following background is derived from the parties' pleadings, the record, and the parties' various submissions and all supporting materials that have been filed in this action. This is not an exhaustive recitation of the background, but is sufficient to set out the underlying facts and issues that have been raised for consideration now.
1. Interstate Fire & Casualty Company ("Interstate") issued a Comprehensive General Liability Insurance policy to Commercial Industrial Building Owner's Alliance, Inc. d/b/a CIBA, policy number SGL 1002220 ("Primary Policy"), for a two year term, March 31, 2010 to March 31, 2012, with a $1,000,000 per occurrence and a $2,000,000 General Aggregate limit for the policy term. Doc. 6, Amended Complaint, ¶ 12.[1] Amended Complaint; also at Doc. 143, Ex. A.
2. The Primary Policy contains a "Named Insured Endorsement" identifying CIBA as a named insured, as well as any associate of CIBA "to whom an Evidence or Certificate of Insurance has been issued and which describes the specific location coverage is limited to." Doc. 6, ¶ 13.
3. CIBA issued Certificates of Insurance to Sunridge and AMC, identifying them as named insureds under the Primary Policy. Doc. 6, ¶ 14.
4. The Primary Policy includes an exclusion relied upon by the plaintiffs in the Amended Complaint, which states:
EXCLUSION -- PUNITIVE OR EXEMPLARY DAMAGES
This insurance does not apply to fines, penalties, punitive damages, exemplary damages, treble damages or the multiplication of compensatory damages.
Doc. 6, ¶ 36.
5. Interstate issued an Excess Liability Policy (which is in excess of the Primary Policy) to CIBA, bearing policy number PFX73097172 ("Interstate Excess Policy"), for a two year term, from March 31, 2010 to March 31, 2012, with a limit of $10,000,000 per occurrence, with a $10,000,000 aggregate for the policy term. Doc. 6, ¶ 15.
6. The Interstate Excess Policy contains a "Schedule of Named Insureds" identifying, among others, CIBA as a named insured, as well as any associate of CIBA "to whom an Evidence or a Certificate of Insurance has been issued and which describes the specific location coverage is limited to." Doc. 6, ¶ 16.
7. Sunridge and AMC are considered named insureds under the Interstate Excess Policy. Doc. 6, ¶ 17.
8. Fireman's Fund issued an Excess Liability Policy (which is in excess of the Interstate Excess Policy) to "CIBA, et al as per First Underlying Insurance," bearing *1247 policy number SHX-000-7262-3879 ("Fireman's Fund Excess Policy") for a two-year term, from March 31, 2010 to March 31, 2012, with a limit of $15,000,000 per occurrence, with a $15,000,000 aggregate for the policy term. The Fireman's Fund Excess Policy identifies "underlying insurance" as the Interstate Excess Policy. Doc. 6, ¶ 18, and n. 1.
9. As Sunridge and AMC are named insureds under the Interstate Excess Policy, they are also considered named insureds under the Fireman's Fund Excess Policy. Doc. 6, ¶ 20.
10. The Primary Policy, the Interstate Excess Policy, and the Fireman's Fund Excess Policy have been collectively referred to as the "Insurance Policies" in the plaintiffs' amended complaint. Doc. 6, ¶ 20.
11. Sunridge Partners, LLC ("Sunridge") owns the Sunridge Apartments in Casper, Wyoming and from at least February 2011 to the present, Robert Ctvrlik has been the Managing Member of Sunridge. Doc. 6, ¶ 6, Doc. 51, Ex. B (Robert Ctvrlik affidavit); Doc. 143, Ex. B.
12. Apartment Management Consultants, LLC ("AMC") operates and manages these Wyoming apartments. Doc. 6, ¶ 8. From July 2010 to present, Martha Knudson has served as the General Counsel for AMC. Doc. 51, Ex. C (Knudson affidavit); Doc. 143. Ex. C.
13. Amber Lompe was a tenant in the Sunridge Apartments, Apartment # 436, in Casper, Wyoming. Doc. 6, ¶ 10.
14. On May 2, 2012, Amber Lompe filed a Complaint naming AMC and Sunridge as defendants in a lawsuit filed by Amber Nicole Lompe in the United States District Court for the District of Wyoming, Case No. 12-CV-88-J, Amber Nicole Lompe v. Sunridge Partners, LLC and Apartment Management Consultants, LLC ("Lompe action"). In her complaint, Lompe alleged she was poisoned by carbon monoxide gas in her apartment in Casper, Wyoming causing her serious injuries and damages. The complaint alleged the defendants were negligent, grossly negligent, reckless, willful and wanton acts and omissions directly, legally, and proximately caused serious injuries to plaintiff Lompe. It also disclosed and stated that she sought to recover, in addition to other compensatory damages, exemplary and punitive damages, "in a reasonable amount to be proved at trial, sufficient to adequately punish the defendants and to serve as a deterrent and warning against future conduct of the type alleged in this complaint[.]" 12-CV-88, Doc. 1.
15. Shortly after being served with the complaint in the Lompe action, AMC tendered defense of the matter to its insurer, Interstate, "one of the Fireman's Fund Companies." 12-CV-88, Doc. 51, Ex. C, Knudson Affidavit; 13-CV-278, Doc. 143, Ex. C.
16. By letter dated April 12, 2012[2] addressed to Knudson and the LLC Members, Kelly Lemoine, Senior Coverage Analyst, "on behalf of Interstate Fire and Casualty Company, one of the Fireman's Fund Companies" wrote:
On behalf of Interstate Fire and Casualty Company (hereafter IFCC), one of the Fireman's Fund Companies, Claims Adjusting Group handles claims in connection with the Commercial Industrial Building Owner's Alliance Insurance *1248 Program. This correspondence shall serve to confirm receipt of the lawsuit entitled Lompe v. Sunridze Partners, et al. Marie Schwarz v. BRC Real Estate et al. , filed in Wyoming District Court, case number 12CV88J.
CIBA Insurance Services, via a policy written through IFCC, has agreed to participate in the defense of Sunridge Partners, LLC and Apartment Management Consultants, LLC. The case has been referred to Peter Dusbabek of Montgomery, Kolodny, Amatuzio & Dusbabek. Mr. Dusbabek's office is located at 2625 Redwing Road, Suite 200 in Fort Collins, CO 80526. You may reach Dusbabek telephonically at 970-221-2800.
We would also like to take this opportunity to advise you that your liability policy carries a $1,000 per loss deductible that applies to this loss.
Should you have any questions or concerns regarding any of the above, please feel free to contact me at 818-638-8534.
13-CV-278, Doc. 141, Ex. 8; Doc. 143, Ex. E. This letter did not expressly include any reservation of rights, disclosure of any exclusions, or assert any other basis for denying or limiting coverage.
17. Peter Dusbabek wrote Bob and Jeff Ctvrlik and Martha Knudson on May 21, 2012, regarding the complaint that had been filed. Dusbabek had been engaged by the insurer to represent AMC and Sunridge in the Lompe litigation. In that letter he states:
The insurance information we have for Sunridge indicates that there is a $1 million per occurrence primary liability limit with $75 million in excess liability (schedule attached). These limits are far in excess of any anticipated damages in this case. Whether the damage claim presents an exposure that would exceed the primary $1 million limit is unknown, however, any excess carrier whose policy may come into play should be placed on notice of the claim immediately. Notably, the complaint contains a punitive damage claim. We do not view this as a punitive damage case, but liability policies generally do not cover punitive damages.
Doc. 141, Ex. 13. In that letter, Dusbabek, after explaining the risks of dual representation of both AMC and Sunridge, requested that the defendants both consent to dual representation of Sunridge and AMC. There is no reservation of rights with respect to punitive damages referenced by Dusbabek nor is there anything that suggests he would have had any authority to make such a reservation at the time he was actively defending AMC and Sunridge at Interstate's behest.
18. On March 25, 2013, Dusbabek, for Sunridge and AMC, filed a motion for summary judgment in 12-CV-88, Doc. 27, seeking judgment in defendants' favor on all claims asserted against them. In that motion, the defendants simply said the following with respect to punitive damages:
Plaintiff asserts that she is entitled to an award of various forms of damages including punitive damages. A claim for punitive damages is not a separate cause of action and cannot stand without an underlying claim. See, e.g. Barham v. Town of Greybull , [2011 WL 2710319] 2011 U.S. Dist. LEXIS 74484 (W. Wyo. July 11, 2011) para. 52, aff'd 483 Fed. Appx. 506, 2012 U.S. App. LEXIS 11306 (10th Cir. 2012). Accordingly, summary judgment for the Defendants on the Plaintiff's negligence claim disposes of her entire claim for relief.
12-CV-88, Doc. 27.
19. Correspondence was exchanged between Dusbabek and counsel for Lompe in *1249 early 2013. Lompe's counsel stated that he thought the case could be settled within the $1,000,000 policy limits. Doc. 141, Ex. 17. Dusbabek followed this with a letter to Baker, the CAG adjuster, with a case evaluation and litigation plan which included a scheduled mediation on March 26, 2013. Doc. 141, Ex. 19. The estimated settlement value was established to be in the range of $225,000-$337,500. Id.
20. The parties engaged in mediation in the Lompe action on March 26, 2013. They were unable to reach a mutually agreed upon resolution of the case. Doc. 141, Ex. 20.
21. May 17, 2013, in a letter to Baker, Knudson wrote on behalf of AMC and Sunridge:
I am writing on behalf of AMC, LLC and our client, Sunridge Partners, LLC. We are in receipt of Mr. Dusbabek's May 16, 2013 status letter addressed to you that discusses the opinions of plaintiff's experts, and I have reviewed their disclosures. Our review has raised serious concerns that the economic risk to both AMC and Sunridge Partners from this case is greater than our initial evaluation.
We appreciate and understand our defense counsel's opinion and assessment of these expert disclosures. However, it is AMC and Sunridge that are the ones at risk for an excess judgment in this case, and the detrimental effects that any judgment would have on our business reputation and credit rating.
AMC and Sunridge Partners want to make sure that you understand, as our carrier, that it is our position that the only reasonable course of action is for this case to be settled within policy limits. As there has already been a settlement demand from the plaintiffs that is within the policy limits, we urge CIBA to settle this case.
Doc. 141, Ex. 25.
22. Knudson wrote Baker again on October 24, 2013:
I am writing on behalf of AMC, LLC and our client, Sunridge Partners, LLC. We have been monitoring this case very closely, and our concerns about the economic risk to both AMC and Sunridge Partners have only increased since my letter to you of May 17, 2013.
We are aware that plaintiff made a prior demand within policy limits. Accordingly, we made a demand on May 17, 2013 that this case be settled. Nevertheless, this did not happen and we are now rapidly approaching trial and the risk of a punitive damages award. While we appreciate and understand our defense counsel's opinion and assessment of Ms. Lompe's credibility and liability issues in this matter, it is AMC and Sunridge that are the ones at risk for a punitive damage and an excess judgment in this case. I don't think that I need to explain to you the detrimental effects that any such judgment would have on our business reputation and credit rating.
AMC and Sunridge Partners want to make sure that you understand, as our carrier, that it is our position that the only reasonable course of action is for this case to be settled. As there has already been a settlement demand from the plaintiffs that is within the policy limits, we urge CIBA to settle this case.
Doc. 141, Ex. 32.
23. On October 25, 2013, this Court entered its Order Denying Motion for *1250 Summary Judgment, finding there were genuine issues of material fact to be determined by the jury at trial. 12-CV-88, Doc. 77; 13-CV-278, Doc. 141, Ex. 34.
24. On November 20, 2013, after entry of the summary judgment motion denial on October 25, 2012, Kelly Lemoine wrote a letter addressed to Sunridge Partners, LLC, c/o AMC, LLC, to the attention of Martha Knudson, referencing the Lompe action, stating:
On behalf of Interstate Fire and Casualty Company (hereafter IFCC), one of the Fireman's Fund Companies, Claims Adjusting Group handles claims in connection with the Commercial Industrial Building Owner's Alliance Insurance Program.
As you are aware, CIBA Insurance Services, via a policy written through IFCC, has been providing a defense to Sunridge Partners, LLC and Apartment Management Consultants, LLC utilizing Peter Dusbabek of Montgomery, Kolodny, Amatuzio & Dusbabek.
Please note that the Complaint against the LLC prays for punitive damages and exemplary damages. An exclusionary provision to the IFCC policy expressly negates coverage for those types of damages. In this respect the policy provides:
"This insurance does not apply to fines, penalties, punitive damages, exemplary damages, treble damages or the multiplication of compensatory damages."
While we will continue to provide Sunridge Partners, LLC and Apartment Management Consultants, LLC with a full and complete defense, any award or judgment for punitive or exemplary damages will be the sole responsibility of Sunridge Partners, LLC and Apartment Management Consultants, LLC. As such, those entities may wish, at their own expense, to hire an attorney to represent them for that portion of the suit.
Should you have any questions or concerns regarding any of the above, please feel free to contact me at 818-638-8534.
This letter was signed by Kelly Lemoine, Senior Coverage Analyst, on behalf of Interstate Fire and Casualty Company, one of the Fireman's Fund Companies. Doc. 141, Ex. 39; Doc. 143, Ex. H.
25. Knudson wrote Kelly Lemoine on November 21, 2013 as follows:
I am in receipt of your letter dated November 20, 2013. We are aware of the exclusion for punitive damages under the policy. However, as I'm sure you understand, when you undertook defense of the above referenced matter, the duty to defend ran and continues to run to all claims both covered or uncovered. The mere presence of a claim for punitive damages does not abrogate your duty to act in good faith to protect the interests of your insureds.
Furthermore, your refusal to settle within the policy limits when you had both the opportunity and a demand from your insureds to do so is troubling. Even putting the possibility of punitive damages aside, the compensatory damage claims here present a reasonable probability that a judgment in excess of policy limits could occur. Accordingly, we renew our repeated demands that you place policy limits on the table and settle the matter.
Doc. 141, Ex. 40.
26. It cannot be meaningfully disputed that the insurers were on notice that punitive *1251 damages were being sought by Lompe from the time that May 2, 2012 complaint was filed, and that the insurers believed that the policies excluded any coverage for punitive damages. The sole reservation of rights, relying on the punitive damages exclusion, was made by the letter dated November 20, 2013. Interstate now suggests that the failure to issue any reservation of rights letter before this date was a mere oversight.
27. The Lompe jury trial commenced on December 2, 2013, 12-CV-88, Doc. 126, eleven calendar days after the untimely November 20, 2013 letter that included a notice that Interstate would continue to defend, but would not pay any judgment for punitive damages, a reservation of rights made on the eve of trial and after refusing AMC's and Sunridge's demands to settle within policy limits and after entry of the order denying Interstate's motion for summary judgment. This letter suggested that Sunridge and AMC retain separate counsel as to the punitive damages issue. This first express written reservation of rights from the insurer came nearly 19 months after the initial complaint asserting a claim for punitive damages was filed on May 2, 2012.
28. After 14 days of trial, a jury verdict in favor of Amber Lompe awarding punitive damages was returned December 20, 2013 after two and one-quarter hours of deliberation. 12-CV-88, Docs. 150, 148.
29. On December 26, 2013, this Court entered judgment in favor of Lompe and against Sunridge, in the sum of $750,000.00, punitive damages in the amount of $3,000,000.00, plus post judgment interest at the statutory rate. Judgment was also entered in favor of Lompe against AMC in the sum of $1,950,000.00, and punitive damages in the sum of $22,500,000.00, with post judgment interest at the statutory rate. 12-CV-88, Doc. 151; 13-CV-278, Doc. 139, Ex. I.
30. AMC and Sunridge filed motion for judgment as a matter of law and for new trial, (12-CV-88, Doc. 175), which was denied by the district court. 12-CV-88, Doc. 207.
31. Motions for Stay of Execution of Judgment Pending Resolution of Post Trial Motions and Appeal were filed and granted. 12-CV-88, Docs. 206, 210.
32. Interstate refused to provide bonds to stay execution of the punitive portions of the judgment and stated AMC and Sunridge would need to post the appeal bonds themselves to cover those amounts. Interstate advised that it would not post bond for any amount beyond the compensatory portion of the judgment. Doc. 139, Ex. J.
33. As to AMC, the motion for stay of execution of judgment was unopposed, because the parties had agreed to terms necessary and designed to protect Lompe's judgment against AMC. Bonds were obtained and deposits of funds were made into a joint escrow account controlled by AMC's and Lompe's escrow agent, Zions Bank. The Court approved the supersedeas bond along with the deposits to the joint escrow account. Separate supersedeas bonds were received for the compensatory damages and for punitive damages awarded by the jury at trial against AMC and Sunridge. 12-CV-88, Docs. 211, 212, 226, 227; 13-CV-278, Doc. 139, Exs. B and C.
34. The cost to Sunridge for the escrow account included a loan in the amount of $3,000,000 (the punitive damage award against Sunridge), taken from an affiliate at an interest rate of 8%. Doc. 139, Ex. B. As of September 30, 2015 interest had accrued on that loan in the amount of $284,810.19. Doc. 139, Exs. B, C, M, N.
*1252 35. The funds for the AMC escrow account came from several loans totaling $10,920,000 with interest rates ranging from 7.5% to 9.0%. Doc. 139, Ex. C. As of October 1, 2015, AMC had incurred interest on the loans in the amount of $875,740.87. Doc. 139, Exs. B, C, M, N. The terms of the AMC loans included provisions for prepayment penalties as well.
36. In their pending motions, AMC and Sunridge seek to recover the total amount of interest and prepayment penalties incurred by AMC and Sunridge as of October 1, 2015 in the amount of $1,316,355.46, as damages for breach of the insurance contract. Doc. 139, Exs. B, C.
37. Notice of Appeal as to the Lompe Judgment was filed on November 17, 2014, (12-CV-88, Doc. 213), and the Tenth Circuit Court of Appeals affirmed in part and reversed in part. 12-CV-88, Docs. 229, 230. The District Court entered judgment in accordance with the mandate of the Tenth Circuit Court of Appeals. 12-CV-88, Doc. 233. The Tenth Circuit's mandate issued June 7, 2016. A Stipulated Motion for Order of Satisfaction of Judgment and Release of Supersedeas Bonds was granted (12-CV-88, Doc. 238) on November 16, 2016.
Pending dispositive motions
There is a considerable amount of overlap in that many claims and arguments raised in the various motions for summary judgment. The claims raised by the parties in their briefs require the Court to consider issues in the following areas:
1. Whether Interstate is required to indemnify for the entire amount of the judgment against AMC and Sunridge, including the awards for punitive damages.
2. What damages, if any, are recoverable by AMC and Sunridge for breach of contract and breach of the implied covenant of good faith and fair dealing and whether such damages include loss of business opportunities and lost profits.
3. Whether AMC and Sunridge are entitled to recover as contractual damages amounts incurred to obtain supersedeas bonds and establish the joint escrow accounts for the purpose of staying execution on the Lompe judgment pending appeal.
4. Whether AMC and Sunridge are entitled to recover interest on the amounts paid to obtain supersedeas bonds and obtain loans to establish the joint escrow accounts for the punitive damages awards against AMC and Sunridge, and if so, are AMC and Sunridge entitled to recover prejudgment interest.
5. If AMC and Sunridge are entitled to recover interest on the amount paid to obtain the bonds and loans to provide security for the punitive damages awards pending appeal, whether interest should accrue at the statutory rate of interest under Wyoming law or at the interest rates in the underlying loan agreements between AMC, Sunridge and affiliates.
6. Whether AMC and Sunridge have cognizable claims for insurance bad faith, and if so, what damages can be recovered.
7. Whether AMC and Sunridge are entitled to recover attorneys' fees.
AMC and Sunridge's contentions
1. AMC and Sunridge argue they are entitled to recover as contractual damages the amounts incurred to obtain bonds and establish the joint escrow account for the purpose of staying execution pending appeal. As part of this argument, they assert they are also entitled to recover interest on the amounts paid for the bonds and escrow account relative to the punitive *1253 damage award against AMC and Sunridge, at the rates set out in the pertinent loan agreements, plus prejudgment interest at the statutory rate under Wyoming law, Wyo. Stat. § 40-14-106. Doc. 139.
2. AMC and Sunridge have asserted insurance bad faith claims against Interstate. Doc. 143. AMC and Sunridge argue that the obligation of good faith and fair dealing inherent in every insurance contract requires the insurer to give equal consideration to the insureds' interests as it would give its own. AMC and Sunridge assert that both forms of insurance bad faith recognized in Wyoming provide avenues for relief in their favor in this case. This includes (1) substantive bad faith, which requires an insurer to have a fairly debatable reason to deny a claim, and (2) procedural bad faith, implied in how an insurer investigates, handles or denies a claim. They contend Interstate is subject to bad faith liability in this case arising out of the manner in which Interstate handled and investigated the Lompe claim with respect to punitive damages. Interstate ignored its obligation to issue a reservation of rights letter within 45 days of the tender of the Lompe action and defended unconditionally for nearly 19 months, putting up only token resistance to Lompe's punitive damage claims, controlling every aspect of the litigation, and only after summary judgment was denied, on the virtual eve of trial, issued a reservation of rights letter advising the insureds that punitive damages would not be covered and that they should consider retaining separate counsel at their own expense to represent them for that portion of the Lompe action.
3. AMC and Sunridge also claim that after the jury awarded punitive damages, Interstate refused to indemnify the punitive portion of the judgment or provide a bond to stay execution for the entire judgment during the pendency of the Lompe appeal. The above captioned action was filed by Interstate shortly after the jury awarded Lompe the punitive damages award against the insureds, which in turn forced AMC to retain new counsel to pursue coverage and defend them in this action. AMC and Sunridge claim that Interstate's actions constitute triable issues of material fact on a procedural bad faith claim, arguing that the insurer's failure to try to effectuate a prompt, fair and equitable settlement in a case where liability was reasonably clear is an unfair claims settlement practice in violation of Wyo. Stat. § 26-13-124, supporting the bad faith claims. Interstate had three opportunities to settle within policy limits, but no settlement offer ever exceeded $450,000, less than half of the primary policy limits. Instead, only $425,000 was offered. The insureds demanded that the matter be settled within policy limits but Interstate did not do so. AMC and Sunridge also argue that they are entitled to recover attorneys' fees and interest pursuant to Wyo. Stat. § 26-15-124. Doc. 139. Interstate opposes this claim. Doc. 148.
Interstate's contentions
Interstate seeks summary judgment in its favor on the claims made by AMC and Sunridge against Interstate as to the following issues:
1. AMC's and Sunridge's claim that Interstate breached the covenant of good faith and fair dealing by not attempting in good faith to settle the claims brought against them by Amber Lompe in the underlying litigation, Lompe v. Sunridge Partners, LLC and Apartment Management Consultants, LLC , filed in the United States District Court for the District of Wyoming, Case No. 12-CV-88-J.
*1254 2. AMC's and Sunridge's claim that Interstate breached the covenant of good faith and fair dealing by failing to provide AMC and Sunridge with a reservation of rights upon acceptance of the tender of the defense of the underlying Lompe action.
3. AMC's and Sunridge's claim that Interstate breached the terms of the Interstate insurance policies under which AMC and Sunridge were insured by failing to provide AMC and Sunridge with a reservation of rights upon acceptance of the tender of defense of the Lompe action.
4. AMC's and Sunridge's claim that they are entitled to recover damages for breach of contract and breach of the implied covenant of good faith and fair dealing, including but not limited to the claim that they are entitled to recover damages for loss of business opportunities and loss profits. Doc. 78.
5. The claims by AMC and Sunridge for punitive damages.
In its motion for summary judgment (Doc. 141), Interstate urges that the ultimate jury verdict in the Lompe action has no bearing on whether Interstate acted in bad faith or not. Interstate argues that it acted reasonably by offering to settle the Lompe case at the amounts recommended by defense counsel for AMC and Sunridge and the CAG claims adjuster, Richard Baker. Interstate says that the third party claims adjuster was a dual agent of AMC, Sunridge and Interstate and that Interstate cannot be held liable in tort based on negligent evaluations or settlement recommendations made by that claims adjuster. Interstate argues it reasonably relied on the assessment of defense counsel for AMC and Sunridge, as well as the claims adjuster, who opined Lompe's damages claims were unrealistic, that the risk of a punitive damages award was low, and that the settlement value of Lompe's claims was well below the primary policy limit. Interstate contends it was not required to offer any additional settlement amount to eliminate the risk of a punitive damages award when the policies excluded coverage for punitive damages. Interstate claims that everyone on the defense team agreed that evidence supporting a punitive damages award was weak.[3]
AMC and Sunridge disagree with Interstate's position. They asked more than once for settlement to be made within the primary policy limits; Interstate refused to do so. AMC and Sunridge characterize Interstate's, their defense counsel's, and the adjuster's erroneous valuations of the case to be a calculated gamble by the insurer, which was a bet only the insureds could lose. They also disagree with Interstate's arguments that CAG, the adjuster, was a dual agent for Interstate, AMC and Sunridge. The contract with CAG and the insurer, Interstate, delegated various servicing tasks, including claims handling and evaluation to CAG; it did not establish a dual agency sufficient to negate bad faith. The Wyoming mediation privilege does not serve Interstate well either, in AMC's and Sunridge's view, in that the privilege can only be claimed by a party to the mediation (AMC, Sunridge or Lompe). They assert the Wyoming statute does not always bar mediation information and communications from admissibility, and in cases where insurer conduct is challenged for *1255 failure to settle or when the insurer's conduct is at issue, it is evidence admissible in most courts across the country. The mediation privilege does not shield an insurer from claims of bad faith. AMC and Sunridge assert that Interstate repeatedly disregarded the insureds' exposure in the Lompe action and challenge the manner in which Interstate dealt with punitive damages and the failure to settle the action within the policy limits when presented with reasonable opportunities to do so.
Standard of Review
Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment may be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See also Yousuf v. Cohlmia , 741 F.3d 31, 37 (10th Cir. 2014). Because this is a diversity case, the Court must apply the substantive law of the state of Wyoming. 28 U.S.C. § 1332 ; Mid-Continent Casualty Company v. Circle S Feed Store, LLC , 754 F.3d 1175, 1178 (10th Cir. 2014). See also Macon v. United Parcel Service, Inc. , 743 F.3d 708, 713 (10th Cir. 2014).
This Court's previous "Pendleton/Cornhusker" ruling (Doc. 131):
In the Court's earlier Order, entitled "Order Granting Apartment Management Consultants, LLC's, and Sunridge Partners, LLC's Motion for Partial Summary Judgment Pursuant to FRCP Rule 56 and Order Denying Interstate Fire & Casualty Company and Fireman's Fund Insurance Company's Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c)," entered September 1, 2015 (Doc. 131), this Court granted the motion for partial summary judgment filed by AMC and Sunridge and found that Interstate and Fireman's Fund Insurance Company may not assert noncoverage as a defense to the claim and that they are precluded from raising the punitive damages exclusion as a means of avoiding or denying indemnity. The Court found that AMC and Sunridge were entitled to coverage and indemnification for the entire amount of the claim, including punitive damages. Interstate unconditionally defended AMC and Sunridge in the Lompe case without a reservation of rights and with knowledge of grounds for noncoverage and believing there was no coverage for punitive damages.
Interstate argued, and argues again here, that estoppel cannot be used to expand coverage under the policy. The Court disagrees. Whenever the insurer assumes defense of an action knowing grounds which would permit it to deny coverage, it may be later estopped from raising the defense of noncoverage in certain circumstances. The arguments by Interstate in the current motions contend that it cannot be estopped to deny liability in this case when the policy excluded coverage for punitive damages and are essentially the same as previously considered and ruled upon in earlier proceedings. Those arguments were rejected and the exception to the general rule precluding the use of the estoppel doctrine to expand coverage under an insurance policy, as discussed in Cornhusker Casualty Company v. Skaj , 786 F.3d 842 (10th Cir. 2015) and Pendleton v. Pan Am. Fire & Cas. Co. , 317 F.2d 96 (10th Cir. 1963), was found to apply. See also Braun v. Annesley , 936 F.2d 1105 (10th Cir. 1991).
The Court persists in this ruling (the prior " Pendleton / Cornhusker ruling" for purposes of this Order). In *1256 Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003 , the Tenth Circuit stated "where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense, in such circumstances, though coverage as such does not exist, the insurer will not be heard to say so." 715 F.3d 1231, 1240 (10th Cir. 2013) (applying New York law). This is not unlike the language used in the Cornhusker v. Skaj decision, 786 F.3d 842 (10th Cir. 2015) and Pendleton v. Pan Am. Fire & Cas. Co. , 317 F.2d 96 (10th Cir. 1963) (discussing the insurer's conduct operating as estoppel to later contest action on the policy), which were discussed at length in this Court's September 2015 decision. That September 2015 decision found that Interstate is estopped from denying coverage for the punitive damages claim asserted against AMC and Sunridge in the underlying Lompe litigation. This earlier decision will not be addressed again here, except to note the authority and line of cases holding that an insurer should bear a specific consequence where it defends and controls litigation in the absence of a reservation of rights even when the claimant is arguably not covered. As the Pendleton court noted,
'Estoppel by conduct arises: Where a party has been induced by the conduct of another to do, or forbear doing, something he would not have, or would have, done but for such conduct; when disadvantage results from such forbearance or action. State ex rel. Fitzhugh v. City Council of City of Hot Springs , 56 N.M. 118, 241 P.2d 100.'( [Porter v. Butte Farmers Mut. Ins. Co. , 68 N.M. 175] 360 P.2d [372] at 376 [ (1961) ].)
Moreover, it has been held that the insurer's conduct in the type of situation we have here operates as an estoppel to later contest an action upon the policy even though the facts may have been within the knowledge of the insured equally as well as within the knowledge of the insurer. Tozer v. Ocean Accident & Guarantee Corp. , 94 Minn. 478, 103 N.W. 509 [ (1905) ] ; Humes Const. Co. v. Philadelphia Casualty Co. , 32 R.I. 246, 79 A. 1 [ (1911) ]. We conclude that the insurer is estopped to now deny liability upon the insurance policy in question.
Pendleton v. Pan Am. Fire & Cas. Co. , 317 F.2d 96, 100-01 (10th Cir. 1963), amended, 326 F.2d 760 (10th Cir. 1964). Accord Evanston Insurance Company v. Law Office of Michael P. Medved, P.C. , 890 F.3d 1195 (10th Cir. 2018) (finding in declaratory judgment action that insurer did not have a duty to defend, having done so under a reservation of rights; discussing estoppel doctrine and the general rule that estoppel cannot be used to create coverage for risks falling outside of the policy; recognizing exception to the general rule's limitation on estoppel, which includes proof of three facts: (1) the insurer knew of the coverage; (2) the insurer assumed defense of the action without a reservation of rights, and (3) the insured relied to its detriment on the insurer's defense.) ) Id. , 890 F.3d at 1200-1201.
The facts that remain before this Court disclose that Interstate controlled the defense of this litigation in its entirety through trial to the prejudice of AMC and Sunridge, knowing that the policy contained language excluding coverage for punitive damages and notwithstanding AMC's and Sunridge's several demands to settle the litigation within the primary policy limits. See also Cornhusker Cas. Co. v. Skaj , 786 F.3d 842, 853-857 (10th Cir. 2015) ;
*1257 Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003 , 715 F.3d at 1241 (stating that "[C]ourts have found prejudice for purposes of estoppel in circumstances in which the insurer's control of the insured's defense has been significantly less extensive, citing Bluestein & Sander v. Chicago Ins. Co. , 276 F.3d 119, 123 (2d Cir. 2002) (concluding prejudice established when insurer controlled defense "almost to the close of disco very"); and Boston Old Colony Ins. Co. v. Lumbermens Mut. Cas. Co. , 889 F.2d 1245, 1248 (2d Cir. 1989) (stating that "[e]ven if Lumbermans had disclaimed liability ten months earlier, on the morning of trial, the disclaimer would still have been prejudicial ... because the Bodians had already taken actions that could not be undone."). It stated that "[u]nder the district court's interpretation of New York law, it is difficult to conceive how any insured could ever establish a valid claim for estoppel. We therefore conclude the district court's determination that BYA failed to establish prejudice is manifestly unreasonable and amounts to a clear error of judgment Clark [v. State Farm Mut. Auto. Ins. Co. ], 433 F.3d [703] at 712 [ (10th Cir. 2005) ].") 715 F.3d at 1241. Here, Interstate did control the litigation to the detriment and prejudice of AMC and Sunridge. The Court's prior decision regarding estoppel and the related issues need not, and will not, be revisited.
The Court finds and concludes that Interstate under the Primary Policy must provide coverage and indemnification, having failed to defend with a timely reservation of rights, for all sums the insureds are legally obligated to pay, which encompasses compensatory and punitive damages. If policy limits under the Primary Policy are exhausted, the excess insurers' obligations are triggered under the applicable "follow form" policies and the excess insurers must provide the agreed-upon excess liability coverage.[4] The excess policies contain no specific exclusion that is applicable to the facts here. Interstate and the excess insurers (if necessary) must provide coverage and indemnification, as previously ordered.
This prior ruling does not address the related claims asserted by AMC and Sunridge regarding the companion claims that Interstate had an obligation to post a supersedeas bond or other security for the entire amount of the judgment to stay execution of the judgment against insureds or whether Interstate's conduct supports AMC's and Sunridge's insurance bad faith claims against Interstate. The Court will address AMC's and Sunridge's claims regarding the refusal to post a security bond as (AMC and Sunridge Motion for Partial Summary Judgment # 1 Regarding Contractual *1258 Damages, Doc. 139) in the context of the prior Cornhusker estoppel ruling and then AMC's and Sunridge's insurance bad faith claims will be addressed separately, below.
AMC's and Sunridge's contentions regarding post-judgment bond and security pending appeal
AMC and Sunridge contend that the Court's ruling which found that Interstate was estopped from denying coverage in the absence of an effective reservation of rights and that Interstate was required to indemnify for the whole amount of the judgment for all damages also dictates that Interstate, in performing its contractual obligation and duty to defend, was required to post a supersedeas bond or other security to stay Lompe's execution on the judgment. Because Interstate failed to satisfy this duty, even though Interstate did appoint appellate counsel, its refusal to post bond for the punitive portions of the judgment put AMC and Sunridge at risk of execution on the large judgment. Because of that risk, AMC and Sunridge assert they were left with little choice other than obtaining large loans to establish security escrow accounts, to avoid seeking bankruptcy relief and perceived potential injuries to their credit rating. They seek to recover, as contractual consequential damages, in addition to the costs of obtaining the security bond and escrow accounts to stay execution on the judgment as to punitive damages, the interest and penalties that accrued on that loan pursuant to the terms of the applicable loan agreements, as well as prejudgment interest as provided by Wyoming law.
Interstate's response
Interstate maintains that it had no duty to cover the punitive damages AMC and Sunridge seek in this action and that it had no duty to post a supersedeas bond or other security for the punitive portions of the judgment. Factually, no one has disputed that Interstate did appeal, provided appellate counsel, and continued to defend AMC and Sunridge through appeal. AMC and Sunridge limited their appeal to the Tenth Circuit to a challenge to the award of punitive damages; the compensatory damages portion of the award was not appealed. Doc. 144, Ex. 9.[5] Interstate asserts that there is no policy provision requiring the insurers to obtain or post appeal bonds. It notes that Interstate did, however, obtain bonds to stay enforcement of the compensatory damage awards, the only portion of the judgment it believed to be covered by the policies. Interstate disagrees with AMC's and Sunridge's arguments that Interstate is estopped from relying on the policy's punitive damage exclusion to deny coverage and refuse to provide appeal bonds as to the punitive damage awards. Interstate contends that it is well settled that "while equitable estoppel operates to prevent one party to a contract from enforcing the terms of the contract, it does not alter the terms of the contract." Doc. 144, 1.
Discussion
AMC argues that Interstate had a duty to appeal and to provide security or a supersedeas bond to prevent the plaintiff from executing on the judgment pending appeal. Although Interstate did provide *1259 defense, the only portion of the judgment for which it provided the supersedeas bond was the compensatory damages portion of the judgment; no bond or other security intended to stay execution of the judgment for the punitive damages portion of the judgment against AMC and Sunridge was provided or obtained by Interstate. This presents issues regarding the obligation of the insurer to provide a supersedeas bond or other security for portions of the judgment outside the Primary Policy (in the absence of the Pendleton / Cornhusker ruling). The policy at issue here provides that as part of any suit it defends it will also pay premiums on bonds to release attachments and for appeal bonds in bond amounts up to the limit of [Interstate's] liability under this coverage, litigation costs taxed against the insured, and interest on a judgment as required by law until the insurer offers the amount due under this coverage. Doc. 144, at Ex. 1, JX032-026. The Court must now ask whether, after the estoppel determination has been made finding the insurer cannot deny coverage under the policy, this ruling concomitantly encompasses an obligation to obtain a supersedeas bond for the entire amount of the judgment, including both compensatory and punitive damages. The Court finds that it does not.
The case law is not entirely clear as to the damages that are recoverable when the Court finds that Pendleton / Cornhusker estoppel doctrine requires an insurer to provide coverage in the absence of an effective reservation of rights. The parties have pointed to no especially persuasive authority that helps resolve this issue. Several principles will guide this Court's decision. As a general rule, contract damages should put injured parties in the same position that they would have been in but for the breach of the contract, less proper deductions. It is that which compensates for the loss which full performance of the contract would have prevented. Numerous cases can be cited to support this general proposition, although none of the cases cited by the parties are precisely on point. See e.g., Reynolds v. Tice , 595 P.2d 1318, 1323 (Wyo. 1979) (breach of contract for the purchase and sale of an oil and gas business); Zitterkopf v. Roussalis, M.D. , 546 P.2d 436, 438 (Wyo. 1976) (breach of agreement to remodel a family room by cabinetmaker); Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees, Sc. Dist. No. 25, Fremont County, Wyoming , 681 P.2d 1326, 1333 (Wyo. 1984) (breach of contract action between school district and the demolition company hired to demolish an old school building); JBC of Wyoming Corp. v. City of Cheyenne , 843 P.2d 1190, 1194-1195 (Wyo. 1992) (arbitration award arising out of contractual construction dispute); UNC Teton Exploration Drilling, Inc. v. Peyton , 774 P.2d 584 (Wyo. 1989) (employment dispute, implicating ERISA law, in which employees after being discharged were denied wage continuation benefits); Reposa v. Buhler , 770 P.2d 235, 238 (Wyo. 1989) (owners of mobile home destroyed in transit sued transportation company; measure of damages for the loss of the personal property ordinarily is market value, to be proven with a reasonable degree of certainty, and damages cannot be remote, conjectural or speculative). This body of law, AMC and Sunridge suggest, also allows them to recover incidental or consequential damages caused by the alleged breach. They contend these damages include the costs of obtaining their own bonds or other security pending appeal, plus interest at the rates agreed to in the pertinent loan agreements with the affiliate *1260 lenders, plus any prepayment penalties, and prejudgment interest at the statutory rate under Wyoming law. Interstate disagrees and urges the Court to determine that AMC and Sunridge have not provided a basis for an award of such damages and are not entitled to recover prejudgment interest at all, whether at the rate in the loan agreements or prejudgment interest at the statutory rate under Wyoming law, 7% per annum.
The Court recognizes the well established proposition that the insurer's duty to defend is broader than its duty to indemnify. See e.g., Lawrence v. State Farm Fire and Cas. Co. , 133 P.3d 976, 980 (Wyo. 2006) ; Matlack v. Mountain West Farm Bureau Mut. Ins. Co. , 44 P.3d 73, 80 (Wyo. 2002) ; United Fire & Cas. Co. v. Shelly Funeral Home, Inc., 642 N.W.2d 648, 656-657 (Iowa 2002). But the issues in this case go beyond issues related to the duty to defend. This Court has already determined that Interstate is estopped from denying coverage and indemnification for the entire amount of the judgment, having failed to defend under an effective, timely reservation of rights and controlling the whole course of the litigation through trial. The effect of this determination, through application of the estoppel doctrine, is to expand coverage under the policy to require coverage for and indemnification for the punitive damages portion of the judgment in addition to the compensatory damages portion of the judgment However, the Pendleton / Cornhusker decision applying the exception to the general rule that estoppel cannot be used to extend or change coverage under an insurance policy is based on equitable considerations and not on the contractual terms of the insurance policy. AMC and Sunridge assert they are seeking to recover contractual damages for the failure to post a supersedeas bond for the punitive portion of the Lompe judgment after Interstate defended the underlying litigation unconditionally without a reservation of rights. The arguments being advanced by AMC and Sunridge are based in contract law, rather than equitable principles. But those arguments are unavailing when their claims would not be cognizable in the absence of the earlier Pendleton / Cornhusker decision based on equitable principles. Those equitable principles were the foundation of the decision that Interstate could not avoid coverage and indemnification for all damages, compensatory and punitive.
Estoppel is a doctrine originating in principles of equity. Mullinnix LLC v. HKB Royalty Trust , 126 P.3d 909, 922-923 (Wyo. 2006).
"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might otherwise have existed as against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse. Equitable estoppel arises only when a party, by acts, conduct, or acquiescence causes another to change his position. The elements of equitable estoppel are a lack of knowledge, reliance in good faith, and action or inaction that results in an injury."
Id. , quoting Parkhurst v. Boykin , 2004 WY 90, ¶ 21, 94 P.3d 450, 460 (Wyo.2004) (citations omitted). The doctrine of equitable estoppel has the effect of precluding an individual from asserting his rights against another person who relied, to his detriment, on the voluntary conduct of the former. Knori v. State, ex rel. Dept. of Health, Office of Medicaid , 109 P.3d 905, 908 (Wyo. 2005). In Knori , the Wyoming Court stated:
*1261 As traditionally viewed, equitable estoppel is embodied by the following concept:
[O]ne who by his acts or representations intentionally or through culpable negligence induces another to believe certain facts to exist, and the latter, not knowing the facts, acts on such belief to his substantial prejudice, the former is, in equity, estopped to deny the existence of such fact.
Department of Family Services v. Peterson , 957 P.2d 1307, 1311 [ (Wyo. 1998) ] (quoting Seaman v. Big Horn Canal Association , 29 Wyo. 391, 398, 213 P. 938 (1923) ). In its current form, equitable estoppel requires "some misrepresentation and is generally applied to prevent fraud, either constructive or actual." Id. at 1311-12 (citations omitted).
Knori , 109 P.3d at 908.
Related principles are also identified in Wyoming. Parties to a contract are presumed to enter into the agreement in light of existing principles of law. O'Donnell v. Blue Cross Blue Shield of Wyoming , 76 P.3d 308 (Wyo. 2003), quoting Union Pacific Resources Company v. Texaco, Inc. , 882 P.2d 212, 222 (Wyo 1994), in turn citing Black & Yates, Inc. v. Negros-Philippine Lumber Company , 32 Wyo. 248, 231 P. 398, 401 (1924). In O'Donnell , the insured sued the insurer for payment of medical bills under a health policy. The insured argued that certain endorsements incorporated into the policy after it had been issued which modified the definition of preexisting condition changed the policy terms so as to require the insurer to pay the claim. The modifications were made to comply with HIPAA law, and the modified definition did not affect the existing policy waiver excluding coverage for the insured's preexisting cervical spinal condition. The insured argued this later endorsement rendered the policy at issue uncertain and ambiguous as to coverage for insured conditions and required application of the "reasonable expectations" doctrine and a liberal interpretation of the policy in favor of the insured. When the policy was initially issued, it expressly excluded coverage for preexisting conditions of the insured's cervical spinal condition. The later modification of the definition of preexisting conditions did not render that existing express provision excluding coverage for the cervical spine condition superfluous or ambiguous. The definition of "preexisting condition" was simply irrelevant to the validity of the waiver of coverage for that condition. The language of the contract and waiver of coverage was unambiguous and the insured's argument asserting that a "reasonable expectations" doctrine should be applied was unavailing. The Wyoming Court stated:
Where insurance contract terms are clear and unambiguous, the "reasonable expectations" of the contracting parties are irrelevant to contract construction issues. A rule of construction that considers the reasonable expectations of the parties is of no assistance where the policy terms are clear and unambiguous. We hold that the contract terms here are clear and unambiguous, and rules of construction such as the doctrine of reasonable expectations are inapplicable.
Ahrenholtz v. Time Insurance Company , 968 P.2d 946, 950 (Wyo.1998) (quoting Pribble v. State Farm Mutual Automobile Insurance Company , 933 P.2d 1108, 1113-14 (Wyo.1997) ).
Id. , 76 P.3d at 315. Clear and unambiguous contract terms should be given effect. This is one of the primary lessons taught by the Wyoming Court in O'Donnell and many other opinions discussing insurance contracts.
*1262 The Court finds that the arguments advanced by AMC and Sunridge asserting that Interstate had an obligation to provide an appeal bond, relying on the coattails of the previous Pendleton / Cornhusker ruling, fail under a contract analysis and fail under the equitable estoppel doctrine that supported the decision requiring Interstate to defend and indemnify for the entire judgment including compensatory and punitive damages. First, the insurance contract itself addresses the insurer's responsibilities with respect to appeal bonds. The policy at issue here provides that as part of any suit it defends it will also pay premiums on bonds to release attachments and for appeal bonds in bond amounts up to the limit of [Interstate's] liability under this coverage, litigation costs taxed against the insured, and interest on a judgment as required by law until the insurer offers the amount due under this coverage. Doc. 144, at Ex. 1, JX032-026. The policy itself limits the insurer's obligation to pay for appeal bonds up to the limit of liability under the coverage of the policy. The language is clear and is not ambiguous.
As to the argument that the doctrine of equitable estoppel, as it has been applied by the Court in this case earlier as to coverage and indemnification also encompasses the duty to provide the appeal bond for the entire amount of the judgment, the Court finds the doctrine does not provide the relief AMC and Sunridge request. The elements of equitable estoppel are lack of knowledge, reliance in good faith, and action or inaction that results in an injury. Mullinnix LLC v. HKB Royalty Trust , 126 P.3d at 923 ; Elworthy v. First Tennessee Bank , 391 P.3d 1113, 1122 (Wyo. 2017). Interstate made no representation to AMC or Sunridge regarding appeal bonds other than it would provide an appeal bond solely for the compensatory portion of the judgment.
The action or conduct of Interstate underlying the Court's decision to apply the Pendleton / Cornhusker exception to find coverage under the policy for compensatory and punitive damages and requiring it to indemnify for all damages was Interstate's continued defense and control of the litigation through trial without a reservation of rights. AMC and Sunridge relied upon Interstate's conduct to their detriment. It was Interstate's conduct - defending without a reservation of rights and controlling the litigation - that led to the decision that Interstate is estopped from denying coverage and indemnification under the policy. The earlier Pendleton / Cornhusker ruling discusses Interstate's conduct leading to the finding that Interstate must provide coverage for compensatory and punitive damages, notwithstanding the policy provision excluding coverage for punitive damages.
However, the analysis in the earlier order does not go so far as to find that Interstate's conduct was the type of egregious conduct justifying an expansion of all policy provisions. There was no discussion about appeal bonds by anyone - including Interstate, AMC, or Sunridge. There was no misrepresentation by Interstate regarding appeal bonds that suggests application of the equitable estoppel doctrine should also dictate a finding that Interstate is required to provide an appeal bond on terms other than as set forth under the policy. The element of AMC's and Sunridge's reliance on representations made by Interstate is absent. There is no evidence that either AMC or Sunridge lacked knowledge of the policy terms as to bonds or that they relied on anything that Interstate did or said in that regard. They are *1263 presumed to have understood and known the terms of the contract and related principles of law.
Where a contract provision is modified by application of the estoppel doctrine, which was this Court's earlier finding requiring Interstate to provide coverage and pay for compensatory and punitive damages, the remaining provisions of the contract remain intact. Contracts are interpreted as a whole; each provision should be read in light of the other provisions and in a way that does not make other provisions inconsistent or meaningless. Memorial Hospital of Sweetwater County v. Menapace , 404 P.3d 1179, 1182 (Wyo. 2017) ; Bear Peak Resources, LLC v. Peak Powder River Resources, LLC , 403 P.3d 1033, 1041-1042 (Wyo. 2017). Contracts are interpreted using an objective approach. Id. Contract review begins by looking at the plain language of the contract and the words used in the contract are afforded the plain meaning a reasonable person would give to them. Bear Peak Resources, LLC , 403 P.3d at 1040-1041.
The Court finds that the estoppel doctrine, as applied previously by this Court in its Pendleton / Cornhusker ruling, does not encompass a corresponding tagalong obligation to provide an appeal bond for the entire judgment, compensatory and punitive damages, pending appeal. Interstate did obtain an appeal bond for the compensatory portions of the judgment, consistent with the terms of the policy. There are no facts that suggest AMC and Sunridge relied on any representation or misrepresentations by Interstate to their detriment. There is no evidence about Interstate's acts or representations regarding appeal bonds that could have induced AMC and Sunridge to believe it would provide appeal bonds for the entire amount of the judgment, including punitive damages. There are no facts that indicate AMC or Sunridge relied on any representation about appeal bonds by Interstate. The only representations or statements made by Interstate were that it would not provide an appeal bond for the punitive damages portion of the judgment, under the express and unambiguous terms of the policy. There are no facts suggesting that AMC or Sunridge did not know of the policy provisions or should have had any expectation that Interstate would provide an appeal bond on terms other than those set forth in the policy. The Court finds the motion of AMC and Sunridge contending that Interstate should have provided and paid for an appeal bond for the punitive damages portion of the judgment must be denied. They will not be entitled to recover amounts claimed to have been incurred or expended to obtain an appeal bond or provide other security to prevent execution on the judgment during the pendency of the Lompe appeal. This includes the request for an award of prejudgment interest at any rate and the request for attorneys' fees.
Bad faith claims
As noted earlier in this Order, Wyoming law recognizes substantive and procedural insurance bad faith claims and causes of action against insurers. This is the law that governs the decision on AMC and Sunridge's insurance bad faith claims.
Wyoming recognizes both substantive and procedural bad faith in the insurance context. See Sonnett v. First Am. Title Ins. Co. , 309 P.3d 799, 806-07 (Wyo.2013) (stating that an insurer acts in bad faith where the substantive validity of a denied claim is "not fairly debatable," and also "by the manner in which it investigates, handles, or denies a claim"
*1264 (internal quotation marks omitted) ); Hatch v. State Farm Fire & Cas. Co. , 842 P.2d 1089, 1099 (Wyo.1992) (" Hatch I ") (observing that a defense to substantive bad-faith liability, which depends on an insurer having "[a] 'fairly debatable' reason to deny a claim," is "not a defense" to procedural bad-faith liability, which "may flow from engaging in oppressive and intimidating claim practices"); see also Marathon Ashland Pipe Line LLC v. Md. Cas. Co. , 243 F.3d 1232, 1246 (10th Cir. 2001) (acknowledging that Wyoming law recognizes both varieties of bad faith). In Vincent's estimation, Cornhusker committed both species of bad faith by denying him coverage under the Policy. We disagree.
Cornhusker Cas. Co. v. Skaj , 786 F.3d at 857.
The Wyoming Court stated, in Sonnett v. First American Title Ins. Co. , 309 P.3d 799, 806 (Wyo. 2013) (decided Sept. 13, 2013):
This Court has found that there is a duty of good faith and fair dealing in every insurance policy between an insurer and insured. Gainsco Ins. Co. v. Amoco Prod. Co. , 2002 WY 122, ¶ 12, 53 P.3d 1051, 1058 (Wyo. 2002). The test used in determining whether a claim was denied in bad faith is an objective one which questions "whether the validity of the denied claim was not fairly debatable." Matlack v. Mountain West Farm Bureau Mut. Ins. Co. , 2002 WY 60, ¶ 19, 44 P.3d 73, 81 (Wyo. 2002). To prevail on a claim of bad faith, the Sonnetts must show:
(1) the absence of a reasonable basis for denying benefits of the policy and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. To satisfy the first essential component, an insured must show that a reasonable insurer under the circumstances would not have acted as it did by denying or delaying payment of the claim.
Id. (internal citations omitted).
Further, the Wyoming Sonnett court continued:
Nonetheless, "even if a claim for benefits is fairly debateable, the insurer may breach the duty of good faith and fair dealing by the manner in which it investigates, handles or denies a claim." Matlack , 2002 WY 60, 44 P.3d at 81. The record shows that, after the Sonnetts notified First American about their claims regarding the Master Plan and right of legal access, First American responded and informed the Sonnetts that an investigation into their claims would be conducted. Further, the record includes the depositions of First American employees and representatives, who described the steps they took to investigate the Sonnetts' claims. Despite this, the Sonnetts state there was a deficient investigation and "a reckless disregard of a lack of a reasonable basis for denial" of the claims. The Sonnetts, however, have pointed to no facts in the record that support that contention. Instead, the facts presented in the record demonstrate that First American conducted an investigation into the claims and determined they were not covered under the policy.
Id. at 807.
An objective standard governs. Cornhusker , 786 F.3d at 858 (citing cases). A substantive bad faith claim, stated differently, requires the litigant to show the *1265 absence of any reasonable basis for denying his claim, or "a litigant must show that a reasonable insurer under the circumstances would not have acted as it did by denying the claim." Id.
In the instant case, disregarding for a moment Interstate's failure or "oversight" in issuing a reservation of rights letter and its continued control of the defense throughout the entire litigation, the Court finds that Interstate had potentially reasonable bases that supported denial of coverage: (1) whether the policy exclusion of punitive damages would come into play in light of the adjuster's and defense counsel's evaluation of the case as one where the insureds were not exposed to any, or little, liability for punitive damages, and (2) whether the Supreme Court would employ any estoppel doctrine such as that outlined in the Pendleton decision and the later 2015 Cornhusker decision to broaden or find coverage under the at-issue policy. These grounds for denial are objectively reasonable. Interstate had a fairly debatable justification for denying coverage in view of the express policy provision excluding punitive damages. A decision to deny coverage for that reason would be objectively reasonable. Additionally, at the time of Interstate's decisions and case evaluation, there was no clarity or clear decision indicating whether the Wyoming Court would have applied a Pendleton estoppel analysis such as that seen in the Cornhusker decision. This Court concludes that Interstate did not act in substantive bad faith in its dealings with AMC and Sunridge, as the validity of the Lompe claims and the unsettled law regarding the Pendleton / Cornhusker doctrine were reasonably debatable.
As to Interstate's rejection of settlement offers that were made, the Wyoming Supreme Court has stated that an insurer's rejection of an indemnitee's settlement offer is not unreasonable when the insured's contractual obligation limited the insurer's liability to a specified dollar amount in the underlying policy and the insurer has a bona fide belief that there could be no excess judgment. Gainsco Ins. Co. v. Amoco Production Co. , 53 P.3d 1051, 1061 (Wyo. 2002), citing Western Cas. & Sur. Co. v. Fowler , 390 P.2d 602, 606 (Wyo. 1964) (discussed in the context of third-party bad faith claims).
As to the procedural bad faith component of AMC's and Sunridge's claims, Wyoming law provides "that [e]ven if a claim for benefits is fairly debatable, the insurer may breach the duty of good faith and fair dealing by the manner in which it investigates, handles, or denies a claim." Cornhusker , 786 F.3d at 859, quoting Matlack v. Mountain West Farm Bureau Mut. Ins. Co. , 44 P.3d 73, 81 (Wyo. 2002) and citing State Farm Mutual Automobile Ins. Co. v. Shrader , 882 P.2d 813, 828 (Wyo. 1994). However, the factual showing required to support a finding of procedural bad faith must be compelling. "[U]nless it is evident the insurer performed no form of satisfactory investigation, a procedural bad-faith claim will not be viable." Cornhusker , 786 F.3d at 859, citing Matlack , 44 P.3d at 81 and Sonnett , 309 P.3d at 807. The Cornhusker opinion offers the Wyoming Court's opinion in Hatch v. State Farm Fire and Cas. Co. , 842 P.2d 1089 (Wyo. 1992) as instructive in considering this type of bad faith claim as it "powerfully demonstrates the egregious level of misconduct that typically gives rise to liability for procedural bad faith." Id.
The instant case is nothing like Hatch and the conduct complained of falls *1266 far short of the compelling type of egregious conduct that may support claims of this sort. Interstate, through the adjuster, its own representatives, and counsel, did investigate the claim and evaluated it as one with little risk of a punitive damages award. Amber Lompe had disabled a carbon monoxide detector in her apartment; counsel for AMC (Martha Knudson) was also advised, participated in discussions and exchanged correspondence, and received information throughout the course of the litigation. Interstate, AMC and Sunridge were never in the dark. The fact that Interstate rejected AMC's demands to settle the case within the policy limits and consider the case as one where there was significant exposure to punitive damages is not the type of claim handling that is beyond the pale. No threats were made; no unreasonable reports or statements were required by the insurer, as occurred in the Hatch case. The Court does recognize that the handling of the claim was far from perfect and flawed; however, a bad faith claim does not provide relief to AMC and Sunridge in these circumstances. The Court finds that the procedural bad faith claim asserted by AMC and Sunridge fails.
"Punitive damages may be awarded when an insurer breaches the duty of good faith and fair dealing." State Farm Mut. Ins. Co. v. Shrader , 882 P.2d 813, 836 (citing McCullough v. Golden Rule Ins. Co. , 789 P.2d 855, 860-861 (Wyo. 1990) ). "However, to award punitive damages for the intentional tort, willful and wanton misconduct must be proven. Id. at 836-837. "Punitive damages are not favored but should be allowed 'with caution [and] within narrow limits.' " Id. at 837 (quoting Weaver v. Mitchell , 715 P.2d 1361, 1369 (Wyo. 1986) ). "Therefore, the purpose of punitive damages, to publicly condemn some notorious action or inaction of a tortfeasor and deter others, requires that punitive damages be awarded only for conduct involving some element of outrage, similar to that usually found in crime." Id. (internal quotation and citations omitted).
The Court has found that as a matter of law that the insurance bad faith claims do not withstand scrutiny. Accordingly, there is no basis for awarding punitive damages on the bad faith claims. Furthermore, in the circumstances of this case where Interstate's conduct was based on a belief that the policy excluded coverage for punitive damages and unsettled law as to whether a Pendleton type exception should apply, it is not the type of conduct that can be considered "wilful and wanton" and does not rise to the level of outrage similar to that usually found in crime so that an award of punitive damages would be appropriate.
The Court will speak briefly to the argument raised by Interstate that CAG was a dual agent of AMC, Sunridge and Interstate. The Court finds it is not persuasive. Interstate delegated the claims adjusting function to CAG under the terms of the policy, service agreement, and as reflected in the letter sent on June 22, 2011 to AMC and Sunridge:
On behalf of Interstate Fire and Casualty Company (hereafter IFCC), one of the Fireman's Fund Companies, the Claims Adjusting Group (CAG) is handling this claim in connection with the Commercial Industrial Building Owner's Alliance (CIBA) Insurance Program.
Doc. 143, Exhibit N. The CAG activities were governed by the scope of the Claims Service Agreement between CIBA, CAG and Fireman's Fund Insurance Company and its affiliates, including Interstate. That *1267 agreement defines the scope of the agreement regarding claims adjustment services and the discretionary settlement authority given to CAG. The agreement provided that adjustment of insureds' claims in excess of CAG's discretionary authority can only be adjusted, settled, paid, and the like with the specific authority of the insurer. Doc. 141, Exhibit 58. These functions were performed by CAG on behalf of the insurers; nothing indicates that the insureds, AMC and Sunridge, were parties to the Servicing Agreement. AMC and Sunridge were participants in and purchasers of insurance coverage through the CIBA insurance program; AMC and Sunridge had no authority to adjust or settle claims. They were insureds and Interstate controlled the decisions regarding their claims and the course of the Lompe litigation. The Court rejects the dual agency argument offered by Interstate.
Interstate has also argued that the mediation privilege shields it from bad faith liability for its failure to settle within the primary policy limits. In view of the disposition previously stated, the Court need not address the issue, except to point to Wyo. Stat. § 1-43-103(a). This statute provides:
(a) A party to the mediation has a privilege to refuse to disclose and to prevent all mediation participants from disclosing confidential communications.
(b) The privilege under this section may be claimed by a representative of the party or by a party, his guardian or conservator, the personal representative of a deceased party, or the successor, trustee or similar representative of a corporation, association, or other organization, whether or not in existence. The person who was the mediator may claim the privilege but only on behalf of the party. The mediator's authority to do so is presumed in the absence of evidence to the contrary.
(c) There is no privilege under this section if any one (1) of the following conditions is met:
(I) All the parties involved provide written consent to disclose;
(ii) The communication involves the contemplation of a future crime or harmful act;
(iii) The communication indicates that a minor child has been or is the suspected victim of child abuse as defined by local statute;
(iv) The communication was otherwise discoverable prior to the mediation;
(v) One of the parties seeks judicial enforcement of the mediated agreement.
The Wyoming Statute expressly limits who may assert the mediation privilege to parties to the mediation. Interstate was not a party to the Lompe mediation and the privilege does not apply. Even if the mediation privilege applied and could be invoked by Interstate to preclude consideration of mediation communications in the instant litigation, it would not change the Court's decision regarding the bad faith claims that have been brought against Interstate by AMC and Sunridge with respect to the refusal to settle within the policy limits.
One more question needs to be addressed with respect to the bad faith claims that have been asserted. The insurer's duty to defend is broader than its duty to indemnify. See e.g., *1268 United Fire & Cas. Co. v. Shelly Funeral Home, Inc. , 642 N.W.2d 648, 656-657 (Iowa 2002). Where an insurer defends under a reservation of rights notwithstanding the belief that matters are not presented that are within coverage under the policy, an insurer's refusal to post a supersedeas bond on appeal of a tort judgment is not bad faith. To prove a first party bad faith claim, the court in Shelly Funeral Home required proof that (1) the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis. Id. at 657. In that case, the insureds similarly argued that the insurer's failure to post a supersedeas bond, "in callous disregard of [the insured's] plight, was evidence of bad faith and maliciousness justifying an award of punitive damages." Id. at 658. There, the court held that "[g]iven the insurer's good-faith doubts about coverage, and the underlying purpose of the bond to secure the judgment, we agree it was reasonable for [the insurer] not to place itself in a position of assuming liability on the bond no matter the outcome of the appeal." Id.
Wyoming's law is not substantially unlike that of Iowa, as outlined in the Shelly case. Where there is a fairly debatable reason for denying coverage under the policy, the insurer has not acted in substantive bad faith in its dealings with the insured. As to the procedural bad faith component of the analysis, the duty may be breached by the manner in which it investigates, handles, or denies a claim. This requires a compelling factual showing by the insured showing the egregious level of misconduct that would give rise to procedural bad faith liability. In this case, as the Court has noted above, the bad faith claims of AMC and Sunridge do not satisfy these standards and the bad faith claims based upon these allegations must be rejected. Having determined that AMC's and Sunridge's bad faith claims fail, the Court finds that they are not entitled to recover damages, including punitive damages and any damages claimed as a result of Interstate's failure to supply a bond pending appeal for the entire amount of the judgment.
Lost profits and business opportunities
In their counterclaims against Interstate, AMC and Sunridge assert that they suffered consequential damages in the form of lost business opportunities and income due to the adverse judgment awarded against them in the Lompe action. Interstate's motion argues that AMC and Sunridge cannot establish that AMC was not awarded other property management contracts because of the adverse judgment in the Lompe action. Interstate argues that AMC's and Sunridge's allegations that AMC was not awarded property management contracts as a result of the judgment in the Lompe action do not withstand scrutiny because AMC cannot show the judgment was the proximate cause of its loss of business and that AMC was not awarded management contracts for reasons unrelated to the Lompe judgment.
In response AMC has argued that the insurer, Interstate, is responsible for all damages arising out of the alleged breach of the covenant of good faith and fair dealing for its failure to settle the Lompe action and resulting judgment. It claims to have lost management fee income over a period of five years for three properties, two in Denver, Colorado, and another in Salt Lake City, Utah. AMC and Sunridge argue the failure to settle is a breach of the duty of good faith and fair dealing giving rise to a bad faith cause of action.
Interstate has filed a separate motion seeking judgment in its favor as to AMC's *1269 and Sunridge's claims that they are entitled to recover damages for loss of business and lost profits. Doc. 78. That motion was opposed by AMC and Sunridge. Doc. 79. In addition to its arguments regarding lost business opportunities and lost profits, Interstate also seeks exclusion of Dr. Formuzis's opinion and expert report which has been offered by AMC to support this particular claim for damages. Given the Court's previous findings that AMC and Sunridge cannot recover as damages costs incurred in obtaining bonds or other security to stay execution of the Lompe judgment and the further decision that they do not have valid insurance bad faith claims, it also follows that AMC and Sunridge cannot recover loss of business opportunities or lost profits as an element of damages. The motion by Interstate seeking to preclude recovery of lost business opportunities and lost profits will be granted. Additionally, the Court will grant the motion to exclude Dr. Formuzis's opinion as to loss of business and lost profits as it is not relevant if AMC and Sunridge cannot recover that type of damages. The motion to exclude Dr. Formuzis's opinion will be granted. Interstate is entitled to summary judgment in its favor on its motion addressing damages for loss of business opportunities and lost profits. Doc. 78.
The disposition of this motion is subsumed in and governed by the foregoing discussion regarding insurance bad faith claims, including claims arising out of failure to settle. The Court has determined that AMC and Sunridge have not stated cognizable bad faith claims, and accordingly, AMC and Sunridge's claims seeking to recover lost business opportunities and lost profits fail. Interstate is entitled to summary judgment in its favor on this claim. The Court need not address further argument regarding this issue.
AMC and Sunridge Motion for Attorneys' Fees (Doc. 138)
In conjunction with their bad faith claims, AMC and Sunridge assert they are entitled to recover attorneys' fees and interest pursuant to Wyo. Stat. § 26-15-124. They contend that this statute applies when the insurer refuses to pay any judgment or loss covered by the policy unreasonably or without cause. It is discretionary with the court whether attorney's fees and prejudgment interest should be awarded. See Bruegger v. National Old Line Ins. Co. , 529 F.2d 869, 870 (10th Cir. 1976).
Wyo. Stat. § 26-15-124 provides:
(c) In any actions or proceedings commenced against any insurance company on any insurance policy or certificate of any type or kind of insurance, or in any case where an insurer is obligated by a liability insurance policy to defend any suit or claim or pay any judgment on behalf of a named insured, if it is determined that the company refuses to pay the full amount of a loss covered by the policy and that the refusal is unreasonable or without cause, any court in which judgment is rendered for a claimant may also award a reasonable sum as an attorney's fee and interest at ten percent (10%) per year.
The Court has previously determined that the refusal to defend or pay was not unreasonable or without cause and did not support any cognizable bad faith claims. Having made this determination, the Court finds that AMC and Sunridge are not entitled to recover attorneys' fees or interest as to the bad faith claims in this case. The motion seeking to recover attorneys' fees and costs (Doc. 138) will be denied.
Conclusion
The Court concludes and finds that Interstate is estopped from denying coverage *1270 and indemnification to AMC and Sunridge pursuant to the Pendleton / Cornhusker exception to the estoppel doctrine precluding expansion of coverage under the insurance policy. Additionally, Interstate must indemnify AMC and Sunridge for the entire amount of the judgment, including punitive and compensatory damages.
AMC and Sunridge are not entitled to recover as contractual damages any amounts for loss of business opportunities and loss profits. Interstate's motion for summary judgment seeking to exclude the opinion of Dr. Formuzi will be granted, as it is not relevant because AMC and Sunridge are not entitled to recover any amounts for loss of business opportunities and loss profits.
AMC and Sunridge are not entitled to recover on their claims that Interstate should have provided an appeal bond for the entire amount of the judgment, including compensatory and punitive damages.
Interstate is entitled to summary judgment in its favor on all of the insurance bad faith claims asserted against it by AMC and Sunridge. AMC and Sunridge are not entitled to recover punitive damages on the bad faith claims. AMC and Sunridge are not entitled to recover attorneys' fees and costs as to the bad faith claims.
The Court also finds that the parties shall bear their own attorneys' fees and costs in this action.
Accordingly, it is therefore
ORDERED that Interstate's motion for summary judgment (Doc. 78) shall be, and is, GRANTED. It is further
ORDERED that AMC's and Sunridge's motion for summary judgment # 1 regarding contractual damages (Doc. 139) shall be, and is, DENIED. It is further
ORDERED that AMC's and Sunridge's motion for summary judgment # 2 regarding attorney's fees (Doc. 138) shall be, and is, DENIED. It is further
ORDERED that Interstate's motion for summary judgment [Doc. 141, Doc. 142 (redacted version) ] shall be, and is, GRANTED IN PART AND DENIED IN PART. It is further
ORDERED that any remaining pending motions shall be, and are, DENIED AS MOOT. It is further
ORDERED that the parties shall bear their own attorneys' fees and costs.
Judgment will be entered accordingly.

Unless otherwise stated, all "Doc.__" references are to docket entries in this case, 13-CV-278. Docket entries in the underlying Lompe action will be identified as "12-CV-88, Doc.___".

This date may be incorrect, as the letter references the complaint filed in this Court by case number, 12-CV-88, which was filed May 2, 2012.

Interstate also argued that claims made by Lompe of bad faith liability also fail. Those issues are moot now, as Amber Lompe was dismissed as a party in the instant case by Order of August 19, 2015. Doc. 120. Thus, the Order here concerns only the claims made by Interstate, AMC and Sunridge against each other.

Lompe was appealed to the Tenth Circuit Court of Appeals, Lompe v. Sunridge Partners, LLC , 818 F.3d 1041 (10th Cir. 2016). The appellate court determined that the evidence showed Sunridge Partners purchased the property for investment purposes and hired AMC as the day to day property manager for the apartments. Upon review, the Tenth Circuit found that the evidence as to Sunridge, even if it supported a finding of negligence, was not sufficient as a matter of law to establish the willful and wanton misconduct necessary to support an award of punitive damages in Wyoming against Sunridge. Lompe , 818 F.3d at 1041. As to AMC, the circuit court reduced the jury's award of punitive damages against the manager from $22.5 million to $1.95 million, a 1:1 ratio where the compensatory damage award was $1,950,000. Following remand by the Tenth Circuit, this Court restored the matter to the docket and entered judgment as to Sunridge in the sum of $750,000 plus post-judgment interest at the statutory rate of 0.59%, and as to AMC compensatory damages in the sum of $1,950,000 and punitive damages in the amount of $1,950,000, plus post-judgment interest at the statutory rate of 0.59% from the date of entry of the judgment. Civil No. 12-CV-88-J, Doc. 233.

The record discloses that compensatory damage portion of the judgment was paid in 2015. Doc. 144, Ex. 10, which includes a partial satisfaction of the judgment as to compensatory damages in the amount of $2,718,736.76 (the compensatory damage judgment, plus costs and applicable interest). The punitive portion of the judgment was unaffected by the partial satisfaction of judgment as to compensatory damages.